**WAYSIDE FARMS, INC., et al., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Defendant.**

**Civ. A. No. C87–1346–A.**

United States District Court, N.D. Ohio, E.D.

June 30, 1987.

Dennis A. Roth, Roth & Rolf, Cleveland, Ohio, for plaintiff.

Rachel L. Belenker, Asst. Atty. Gen., Columbus, Ohio, for defendant Ohio Dept. of Human Services.

Michael Anne Johnson, Asst. U.S. Atty., Cleveland, Ohio; Richard A. Urbin, Asst. Regional Counsel, Dept. of Health and Human Services, Chicago, Ill., for defendant U.S. Dept. of Health and Human Services.

## ORDER

BELL, District Judge.

Plaintiff Wayside Farms, Inc. (Wayside) filed this action for preliminary and permanent injunctive relief against nine state and federal agencies and officials pursuant to the provisions of 28 U.S.C. § 1331, 42 U.S.C. § 1396i(c)(2), 42 U.S.C. § 405(g) and of the United States Constitution. Forty-eight individuals are named as plaintiffs having an interest in the continued care of the residents of the Wayside facility, a nursing home certified as an "intermediate care nursing facility." The federal defendants include the United States Department

of Health and Human Services and four officials of the Health Care Financing Corporation (HCFC): William L. Roper, Barbara Gagel, Chester C. Stroyny and David Wells. The state defendants are the Ohio Department of Health and its director, Dr. Ronald Fletcher, and the Ohio Department of Human Services and its director, Patricia Barry.

A temporary restraining order was entered by this court on June 10, 1987 enjoining the defendants from terminating Wayside's provider agreement with the state and from terminating Wayside's Medicaid funding until June 20, 1987. A preliminary injunction hearing was held on June 19, 1987 at which time the temporary restraining order was extended for ten days, until June 30, 1987, pursuant to Federal Rule of Civil Procedure 65(b) to preserve the status quo while the court considers the merits of the preliminary injunctive relief sought.

The federal defendants have moved to dismiss the individual plaintiffs in this case for lack of standing and to dismiss the claims of Wayside on the jurisdictional basis of failure to exhaust administrative remedies. Plaintiffs have responded in opposition to this motion. The issues raised by this motion are also now before the court. Motions recently submitted by the state defendants will be ruled on after responses have been filed.

## I. Factual Background

Plaintiff Wayside, an Ohio corporation owned by a trust, operates a nursing home certified as an intermediate care nursing facility. It is also licensed by the State of Ohio as a mild mental nursing home and as a regular nursing home. The State of Ohio first entered a provider agreement with Wayside, a requirement for participation in the federal-state funded Medicaid program, in 1972. Wayside's certification to provide care to Medicaid recipients has been continually renewed on a yearly basis by the state until the present time. Sixty of Wayside's ninety-four residents are Medicaid assisted, and five of the privately-paying residents have pending applications for Medicaid assistance.

The state is primarily responsible for ensuring that Wayside, as a Medicaid provider, meets federal standards for participation in that program. The United States Department of Health and Human Services (the Secretary), however, may conduct "look behind" surveys of its own pursuant to 42 U.S.C. § 1396a(33)(B), if there is cause to question the state's determination. Based upon such a survey, should the Secretary find that any skilled nursing or intermediate care facility fails to meet federal standards, approval of that facility's eligibility for further participation in the Medicaid program may be canceled. 42 U.S.C. § 1396i(c)(1).

During the period of May 28–30, 1985, the Secretary conducted a "look behind" survey at Wayside. On August 30, 1985, Wayside was informed pursuant to 42 U.S.C. § 1396i(c)(1) that based on the survey findings, it did not meet federal standards for continued Medicaid participation, and that its eligibility would terminate on November 1, 1986. Wayside, dissatisfied with this conclusion, filed a request for a hearing by the Secretary, the administrative remedy provided by 42 U.S.C. § 1396i(c)(2). The State of Ohio surveys conducted in April, 1985 and July, 1986 found that Wayside was in substantial compliance with federal regulations.

A hearing before an Administrative Law Judge (ALJ) was conducted in August, 1986. On May 14, 1987, the ALJ issued his opinion stating that while approximately one-half of the deficiencies noted during the May, 1985 survey were unsubstantiated, the deficiencies which were established warranted decertification. Wayside was notified that it was terminated from the Medicaid program as of the date of the ALJ's decision, May 14, 1987, but that federal funding would continue for thirty days until June 14, 1987.

On June 2, 1987, Wayside filed its administrative appeal from the ALJ's decision and initiated this lawsuit to enjoin the Secretary from terminating its Medicaid funding pending exhaustion of its administrative remedies.

## II. Jurisdiction

As this court has often noted, it is a court of limited jurisdiction, *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Jurisdictional questions must of necessity be addressed before the questions raised by the motion for preliminary injunction. The first jurisdictional question is whether the forty-eight individual plaintiffs have standing to press the claims raised in the complaint.

■ The individual plaintiffs in this case consist of the guardians, next friends or caseworkers for thirty-nine Wayside residents who include both private pay patients and Medicaid recipients. Also named as plaintiffs are a Roman Catholic nun, who is an employee of Wayside, and a former state senator, both of whom are keenly interested in the health and welfare of all Wayside residents.

The Supreme Court has addressed the issue of the legal status of such parties in pending litigation such as that now before this court. It has done so in the context of proceedings related to revocation of a facility's authority to provide services reimbursed under the Medicare and Medicaid programs. *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980). The Court there held that the six individual plaintiffs, all Medicaid patients, had no direct Constitutional interest in the decertification proceedings related to the nursing home in which they resided. *Id.* at 790, 100 S.Ct. at 2477. Justice Stevens, in writing for the majority, however, discussed the interests of both private and Medicaid patients as follows:

This case does not involve the withdrawal of direct benefits. Rather, it involves the Government's attempt to confer an indirect benefit on Medicaid patients by imposing and enforcing minimum standards of care on facilities like Town Court. When enforcement of those standards requires decertification of a facility, there may be an immediate, adverse impact on some residents. But surely that impact, which is an indirect and incidental result of the Government's enforcement action, does not amount to a deprivation of any interest in life, liberty, or property.

Medicaid patients who are forced to move because their nursing home has been decertified are in no different position for purposes of due process analysis than financially independent residents of a nursing home who are forced to move because the home's state license has been revoked. Both groups of patients are indirect beneficiaries of government programs designed to guarantee a minimum standard of care for patients as a class. Both may be injured by the closing of a home due to revocation of its state license or its decertification as a Medicaid provider. Thus, whether they are private patients or Medicaid patients, some may have difficulty locating other homes they consider suitable or may suffer both emotional and physical harm as a result of the disruption associated with their move. Yet none of these patients would lose the ability to finance his or her continued care in a properly licensed or certified institution. And, while they might have a claim against the nursing home for damages, none would have any claim against the responsible governmental authorities for the deprivation of an interest in life, liberty, or property.

*Id.* at 787–88, 100 S.Ct. at 2476–77 (footnote omitted).

Pursuant to this precedential opinion, the court finds that the individual plaintiffs in this case, be they persons interested on behalf of private or of Medicaid patients, do not have standing to challenge the action against Wayside which threatens to stop its ability to receive Medicaid reimbursement pending appeal of the ALJ's decision. *See also Lexington Management Company, Inc. v. Missouri Department of Social Services*, 656 F.Supp. 36, 41 (W.D.Mo.1986). Accordingly, all of the individual plaintiffs are dismissed.

The federal defendants also seek an order dismissing this entire action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The basis for this request is the plaintiff's fail-

ure to exhaust administrative remedies, a jurisdictional prerequisite to suit in this court under 42 U.S.C. § 405.

Analysis of this issue must begin with the very statute which, in Wayside's opinion, requires extension of their Medicaid funding pending appeal of the ALJ's decision, section 1396i(c)(2), which provides:

Any skilled nursing facility or intermediate care facility which is dissatisfied with a determination by the Secretary that it no longer qualifies as a skilled nursing facility or intermediate care facility for purposes of this subchapter shall be entitled to a hearing by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title. Any agreement between such facility and the State agency shall remain in effect until the period for filing a request for a hearing has expired, or, if a request has been filed, until a decision has been made by the Secretary; except that the agreement shall not be extended if the Secretary makes a written determination, specifying the reasons therefor, that the confirmation of the provider status constitutes an immediate and serious threat to the health and safety of patients, and the Secretary certifies that the facility has been notified of its deficiencies and has failed to correct them.

This section, in essence, adopts the jurisdiction conferred upon district courts by section 405(g) rather than providing its own. Section 405(g) then, is the initial jurisdictional predicate for this lawsuit. *See Gruter Foundation, Inc. v. Bowen*, 652 F.Supp. 245, 250–54 (N.D.Ohio 1986) (This court discussed jurisdictional issues related to the section 1396i(c)(2) procedure when the Secretary has determined that there is an immediate and serious threat to the health and safety of patients.).

Pursuant to section 405(g), judicial review is only available if: (1) an action was brought after a final decision of the Secretary rendered after a hearing to which the provider was a party; (2) the action was timely filed; and (3) the action was filed in an appropriate court. *Northlake Community Hospital v. United States*, 654 F.2d 1234, 1240 (7th Cir.1981). Thus, the preliminary requirement concerning whether the Secretary has rendered a final decision is "central to the requisite grant of subject matter jurisdiction." *Weinberger v. Salfi*, 422 U.S. 749, 764, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).

It is undisputed in this case that an appeal of the ALJ's decertification is pending and that the decision of the Secretary is thus not yet final for the purpose of section 405(g) review in this court. However, Wayside contends that its action for injunctive relief falls within an exception to the exhaustion aspect of the final decision requirement of section 405(g).

The Supreme Court has ruled that there are two requirements which must be met to establish a final decision of the Secretary: (1) the presentation of a claim for benefits and (2) the exhaustion of administrative remedies. *Heckler v. Ringer*, 466 U.S. 602, 617, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984); *Mathews v. Eldridge*, 424 U.S. 319, 329, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976). Here Wayside has presented a claim which challenges the decision to prematurely terminate its Medicaid provider status, which claim satisfies the first requirement. *See Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072, 1082 (7th Cir.1982).

The exhaustion requirement may be waived by the Secretary. *Heckler v. Ringer*, 466 U.S. at 617, 104 S.Ct. at 2022; *Mathews v. Eldridge*, 424 U.S. at 328, 96 S.Ct. at 899. The requirement may also be considered as waived by the court when it is found that plaintiff raises a colorable constitutional claim which is entirely collateral to his claim of entitlement and his interest in having this issue resolved promptly is so great as to outweigh deference to the agency's judgment. *Mathews v. Eldridge*, 424 U.S. at 330, 96 S.Ct. at 900. In this case, the Secretary is not waiving the exhaustion requirement. Therefore, the second prong of the waiver inquiry must be examined.

■ Wayside contends that the issue of whether its ability to be reimbursed for care of Medicaid recipients should be continued pending administrative appeal is completely collateral to that appeal and requires prompt resolution to avoid great harm to its patients and to its ability to stay in business. This court agrees. The question raised in this proceeding has nothing to do with the substantive issues raised in the administrative proceeding which involve the validity of the decertification decision. Here, Wayside seeks only to compel the Secretary to abide by its interpretation of section 1396i(c)(2) and continue its funding through that administrative process. This is just the type of "crucial collateral claim" which may be moot if left until the administrative remedies are exhausted. *Mathews v. Eldridge*, 424 U.S. at 331 n. 11, 96 S.Ct. at 901 n. 11; *Lexington Management Co., Inc. v. Missouri Dept. of Social Services*, 656 F.Supp. at 42. The Supreme Court has advised that "the nature of the claim being asserted and the consequences of deferment of judicial review are important factors" in the consideration of the final decision requirement and the role these factors play "is illustrated by the intensely 'practical' approach which the Court has adopted ... when applying the finality requirements." *Id.* *See also Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 2138, 90 L.Ed.2d 623, 628–29, 635 (1986) (There is a strong presumption that Congress intends that there be judicial review of agency action.).

In *Mathews v. Eldridge*, the Court reviewed a constitutional challenge which they found collateral to the substantive claim of entitlement. In this case, Wayside argues that its due process rights are involved. The extent of due process rights enjoyed by a provider in relation to a decision to terminate its certification involves a balancing of its interest in continued certification with the interests of the Medicaid recipients, the true beneficiaries. It is generally agreed, however, that a provider does have some property interest in the expectation of continued participation in the Medicaid program pursuant to statute which is subject to due process protection. *See Gruter Foundation, Inc. v. Bowen*, 652 F.Supp. at 253–54 and cases cited. *See also Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972) (The court discusses property interests protected by the due process clause). Certainly the statute involved here sets the boundaries of due process to which Wayside is entitled, and it is those boundaries which it seeks to define. To that extent, Wayside has raised at least a colorable constitutional claim.

Further, in applying the practical approach suggested by the Supreme Court, courts have held that collateral statutory as well as constitutional claims may be a proper basis for waiver of the exhaustion requirement. *Reed v. Heckler*, 756 F.2d 779, 784–85 (10th Cir.1985); *Lopez v. Heckler*, 725 F.2d 1489, 1503 (9th Cir.), vacated on other grounds, 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984); *Kuehner v. Schweiker*, 717 F.2d 813, 817–18 (3d Cir. 1983), vacated on other grounds, 469 U.S. 977, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984); *Wright v. Califano*, 587 F.2d 345, 349 (7th Cir.1978); *Caswell v. Califano*, 583 F.2d 9, 14 (1st Cir.1978); *Jones v. Califano*, 576 F.2d 12, 20–21 (2d Cir.1978); *Liberty Alliance of the Blind v. Califano*, 568 F.2d 333, 346 (3d Cir.1977); *Fitzgerald v. Schweiker*, 538 F.Supp. 992, 997–98 (D.Md. 1982). This is a case of statutory construction which would affect all providers. Therefore, the Secretary has no legitimate interest in requiring Wayside to pursue its individual administrative appeal prior to judicial interpretation of section 1396i(c)(2). *Reed v. Heckler*, 756 F.2d at 785 (citing, *Jones v. Califano*, 576 F.2d at 20–21).

Accordingly, this court finds that the exhaustion requirement may be found to have been waived in this case as we have defined that process, and that jurisdiction is proper pursuant to section 405(g). It should be noted that this case differs significantly from *Gruter Foundation, Inc. v. Bowen*, 652 F.Supp. at 245, which involved decertification based on a finding of an immediate and serious threat to the health and safety of the patients. In that case, the nature of

the relief sought was so intertwined with the individual substantive issues that deference had to be given to the administrative processes clearly provided by Congress under those circumstances. In this case, most importantly there is no such threat to patients, and Wayside's certification has been continued through the administrative processes conducted so far. The only issue before this court is whether the statute provides that funding should continue until all administrative processes have been exhausted.

The only remaining jurisdictional issue before the court was raised by the federal defendants at the preliminary injunction hearing. They contend that the case of *Dunn v. Retail Clerks Int'l Ass'n, Local 1529,* 299 F.2d 873 (6th Cir.1962), stands for the proposition that this court should not assume jurisdiction in a case when the temporary relief sought will finally dispose of the case on the merits. That case is both factually and procedurally distinguishable from this case, however. In view of the significant volume of law already cited by this court in support of its decision to assume jurisdiction, the nature of the relief sought cannot be allowed to undermine that legal basis.

### III. Preliminary Injunction

In this circuit, four factors must be considered in determining whether a preliminary injunction should be granted. These factors are:

1. Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;
2. Whether the plaintiff has shown irreparable injury;
3. Whether the issuance of a preliminary injunction would cause substantial harm to others; and
4. Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977); *accord, Christian Schmidt Brewing v. G. Heileman Brewing,* 753 F.2d 1354, 1356 (6th Cir.1985); *Tate v. Frey,* 735 F.2d 986, 990 (6th Cir.1984); *Friendship Materials, Inc. v. Michigan Brick,* 679 F.2d 100, 102 (6th Cir.1982).

The merits of the instant dispute require interpretation of the following emphasized language of section 1396i(c)(2):

(2) Any skilled nursing facility or intermediate care facility which is dissatisfied with a determination by the Secretary that it no longer qualifies as a skilled nursing facility or intermediate care facility for purposes of this subchapter, shall be entitled to a hearing by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title. Any agreement between such facility and the State agency shall remain in effect until the period for filing a request for a hearing has expired or, if a request has been filed, *until a decision has been made by the Secretary;*

A decision has been made that Wayside no longer qualifies as an intermediate care facility and Wayside has invoked the administrative proceedings provided in section 405. Once the ALJ decision was rendered, Wayside was notified that based upon that decision made by the Secretary its provider agreement would be terminated. It is Wayside's contention that the language of the statute, "until a decision has been made by the Secretary," means a final decision after all administrative appeals are exhausted. The Secretary, on the other hand, interprets this language to mean that the point in time when the provider agreement terminates is upon the ALJ's decision rendered after a hearing, and it is this interpretation which prompted notice to Wayside of its decertification once the ALJ had ruled.

The Supreme Court has defined the order of analysis under these circumstances in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), as follows:

When a court reviews an agency's construction of the statute which it adminis-

ters, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. (Footnotes omitted). *See also Young v. Community Nutrition Institute,* 475 U.S. ——, ——, 106 S.Ct. 2360, 2364, 90 L.Ed.2d 959, 966 (1986).

In regard to the first question, this court finds that Congress did not unambiguously express its intent in the language of section 1396i(c)(2) as to the point when a provider agreement terminates. When administrative processes involve several levels of review, the language that a provider agreement shall remain in effect "until *a decision* has been made by the Secretary" can hardly be said to be unambiguous or definitive.

■ It is thus necessary to determine if the Secretary's construction of the statutory language is permissible and reasonable. *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82. While the Supreme Court has indicated that some deference should be given to an agency interpretation of a statute it administers, that deference is not so complete as to convert reviewing courts into rubber stamps for agency action. *See Mayburg v. Secretary of Health and Human Services,* 740 F.2d 100, 105–07 (1st Cir.1984) (The court discusses two lines of Supreme Court cases on the issue of deference to agency interpretation and the possible theories underlying such deference.). In this case,

even if deference to the Secretary's interpretation could be considered permissible, it is unreasonable in view of the intent of Congress in formulating section 1396i(c).

Congress passed section 1396i as part of the Omnibus Reconciliation Act of 1980 as a means of balancing the public interest in full compliance with standards for Medicaid participation with the recognition that there is a nationwide shortage of skilled nursing home beds and that there is validity in forestalling the need for traumatic transfers of large numbers of patients pending correction of deficiencies which do not pose an immediate threat of harm to them. *See* H.R.Rep. 96–1167, 96th Cong., 2d Sess. 57, *reprinted in* 1980 U.S.Code Cong. & Ad.News 5526, 5568–71. Section 1396i was designed to empower the Secretary to do independent surveys to determine whether a facility is in compliance with federal standards thus enabling him to "look behind" surveys done by the state who has the primary responsibility for compliance enforcement. Should the Secretary find deficiencies during a "look behind" survey, section 1396i provides for imposition of intermediate sanctions to encourage rapid compliance rather than the drastic step of program termination, the only option previously available. *Id.* at 5569. Immediate program termination based on a "look behind" survey is required under section 1396i only if serious deficiencies are found which pose threat of harm to the patients. The intermediate sanction made possible by section 1396i is to deny reimbursement to any patient admitted after a certain date until the facility is brought back into compliance. Medicaid payments would continue as to those patients admitted prior to the designated date. *Id.* at 5569–70. This intermediate sanction could be applied "only after the Secretary has provided the facility with an opportunity to present its case at an informal hearing consistent with current practices." *Id.* at 5569. The Congressional report states that "[i]f the facility seeks further administrative or judicial appeals, the sanction would remain in effect while the appeals were pending." *Id.* It is this court's view that Congress intended to provide the Secretary

an affirmative enforcement tool in restricting the admission of new Medicaid patients to a noncomplying facility and that Congress intended that the Secretary be allowed to impose the sanction for a limited period, not to exceed twelve months, *id.*, after an original hearing was provided before an ALJ. In this manner, a balance is struck between massive dislocation of existing patients and the necessity of rapid compliance before new patients are admitted.

But, the Secretary reads this same legislative history to provide that a noncomplying facility may be terminated entirely after a hearing before the ALJ. This, however, is simply inconsistent with the spirit and intent of Congress in passing section 1396i. It is the intent of Congress to bring facilities into compliance in order to minimize transfers when deficiencies are not dangerous to health in view of the current scarcity of qualified beds. *See* Plaintiffs' Brief Opposing HCFA's Motion to Dismiss, Affidavit of Edna Overturf and computer information attached gathered from the Ohio Department of Health concerning the number of nursing home beds in Ohio in several categories. If the Secretary determines, after a full hearing, that intermediate sanctions are appropriate, it is logical that as a tool of compliance short of termination proceedings, sanctions are to be applied before the full course of administrative and judicial review. Concern for the living conditions of existing patients and the short-term incentive for the provider to comply justify such action. Once a termination decision is made, however, the effects on both the patients and the facility are so drastic that the status quo should be maintained until the agency has had a full opportunity to consider its decision in light of the circumstances. This must logically be after the Secretary has reached a final decision as defined under section 405(g), that is after the Appeals Council decision. *See Bauzo v. Bowen,* 803 F.2d 917, 921 (7th Cir.1986); *Mullen v. Bowen,* 800 F.2d 535, 538 (6th Cir.1986).

Section 1396i(c)(2) has been interpreted by Judge Wright in *Lexington Management Company, Inc. v. Missouri Department of Social Services,* 656 F.Supp. 36, 44 (W.D.Mo.1986), as advancing "Congress' interest by providing for a continuation of certification pending exhaustion of the administrative appeals process." This court agrees with Judge Wright's reading of the statute in light of its legislative history.

In fairness, however, it should be noted that Judge Wright was deciding a different but related issue, that the parties stipulated that a provider agreement would remain in effect pending exhaustion of administrative appeal under section 1396i(c)(2) unless there was an immediate and serious threat to the health and safety of the patients. *Id.* at 39 and n. 4. The federal defendants were third party defendants in that case and it is not clear whether they, too, entered this stipulation. The federal defendants took an active part in the proceedings, however, based on the many references made to their contentions by the district court in the course of its opinion finding that certification should continue pending exhaustion of administrative appeal. *Id.* at 42–45 and n. 7–10. The federal defendants argue that such a stipulation in this cause would be directly contrary to the present position of the Secretary.

As evidence of the Secretary's position, the federal defendants supplemented their brief in opposition to plaintiffs' motion for preliminary injunction with recently promulgated regulations from HCFA effective June 12, 1987. *See* 42 C.F.R. Part 498. Section 498.5(j)(1) and (2) do appear to support the Secretary's interpretation of the statute advanced in this court. However, as this court has already ruled, his interpretation is not reasonable in light of the underlying intent of Congress in enacting section 1396i(c)(2).

The Secretary has raised a number of points in defense of his interpretation of section 1396i(c)(2) which must be addressed. By means of statutory construction, the Secretary argues that use of the words "a decision by the Secretary" in the second sentence refers to the words "a hearing by the Secretary" in the first sentence. That, however, does not automatically follow and, in particular, does not

cure the ambiguity of the words "a decision by the Secretary" to which reference has been made.

The Secretary next argues that provider agreements under Medicare can be terminated prior to a final decision of noncompliance by the Secretary pursuant to 42 U.S.C. § 1395cc(b)(2), and that "courts have had little trouble recognizing" that. Federal Defendants' Motion for Preliminary Injunction at 10. No decisions are cited, however, and this court notices that section 1396i(c)(2) specifically provides for extension of an agreement until a decision by the Secretary.

The last point raised by the Secretary is that Congress knew there were several levels of review possible in the administrative process and was aware that a ruling by an ALJ was "a decision" in other contexts of the law governing social security administration. *See* 42 U.S.C. § 1383(a)(7)(A) and H.Conf.Rep. 1039, 98th Cong., 2d Sess. 33, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3038, 3080, 3091 (Disability benefits may be paid pending appeal of an ALJ's termination decision at the option of the recipient with the understanding that the benefits will be subject to recovery as overpayments if the termination decision is upheld.). This argument, framed in a setting different than the one presented here, is not persuasive.

■ The court thus finds that there is a substantial probability of success on the merits of the question raised by Wayside. In deference to the Congressional concern for the well-being of Medicaid patients, Wayside's provider agreement should be continued through the administrative appeal which has been filed. Although this allows plaintiff some period of respite, the court must make clear that it may be only a brief stay in the termination proceedings relating to Wayside's provider agreement should the Secretary finally find that decertification is required. After a final decision to that effect, the Secretary is well within his authority and, in fact, required to take such action. In addition, the Secretary controls his administrative processes and the time involved for appeal of cases such as this. Thus, the concern he has may be addressed sooner if he desires to expedite the appeal. There is, in the meantime, no loss of funding as payments would be made to the Medicaid recipients involved regardless of whether they were in this or another facility.

The plaintiff introduced evidence at the hearing indicating that transfer of some of the patients may be difficult for many and impossible for some. *See* Testimony of Michael Strahan, Dorothy Harbin and Dr. Daniel Deutschman. In addition, figures introduced by Frank Bevilacqua, C.P.A., show the financial loss Wayside will suffer if it loses its provider agreement. While all of these problems may eventually become a reality if the termination decision is upheld, the harm would be irreparable if the decision is reversed on appeal.

There is no harm caused to the Secretary by continuing the agreement during the appeal process. As already noted, this is not a case of immediate danger to the patients and the agreement has been continued thus far. The Secretary would continue the appeal process and provide reimbursement for these patients in some facility regardless of whether the agreement were continued with Wayside or another provider of care services.

Finally, the public interest would be served by continuing the provider agreement through the appeals process. Preserving the status quo under these circumstances until the decision has been thoroughly considered avoids the transfer of patients and the possible closing of nursing home beds already scarce in this state.

Accordingly, inasmuch as Wayside has satisfied the requirements for granting a preliminary injunction, that relief will be awarded.

In accordance with this opinion, it is hereby

1. ORDERED that the federal defendants' motion to dismiss is granted as it relates to the individual plaintiffs in this case and they are hereby dismissed;

2. ORDERED that the federal defendants' motion to dismiss for lack of subject

matter jurisdiction pursuant to Rule 12(b)(1) is denied;

3. ORDERED that Wayside's Motion for Preliminary Injunction is granted and that:

a. the defendants, both federal and state, are enjoined from terminating Wayside's provider agreement and Medicaid funding until the administrative appeal process before the federal agency has been exhausted; and

b. the original injunction bond filed in this action shall be continued.

IT IS SO ORDERED.