**WAYSIDE FARM, INC., Plaintiff,**

v.

**Otis R. BOWEN, et al., Defendants.**

**No. C88–3744A.**

United States District Court,
N.D. Ohio, E.D.

Oct. 27, 1988.

As Amended Nov. 22, 1988.

David Noble, Cleveland, Ohio, Thomas W. Hess, Buckingham, Doolittle & Burroughs, Akron, Ohio, for plaintiff.

Michael Ann Johnson, Asst. U.S. Atty., Cleveland, Ohio, Richard A. Urbin, Asst. Regional Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. INTRODUCTION.

Before the Court in the above-captioned case is the plaintiff's motion for prelimi-

nary injunction. On October 13, 1988 the Court denied the plaintiff's motion for a Temporary Restraining Order primarily on the basis that the plaintiff failed to show any likelihood of success on the merits. (Docket # 10).

The plaintiff has filed a supplemental brief in support of the preliminary injunction with the Court. (Docket # 11). The government has opposed the motion and filed a memorandum in opposition to the motion for preliminary injunction. (Docket # 12). The Court conducted a hearing on the plaintiff's motion on October 18, 1988 and heard both testimony and arguments.

For the reasons that follow, the motion for a preliminary injunction is denied with the limitation that the State defendants are temporarily enjoined from transferring any of the affected Wayside patients prior to Wednesday, November 2, 1988.

## II. BACKGROUND.

The background facts in this case are relatively simple and the Court has already discussed them in its order of October 13, 1988. (*See* docket # 10 at pp. 2–3). Nonetheless, the Court finds it useful to restate the relevant facts.[1]

Wayside Farm, Inc. operates an intermediate care nursing facility in Cuyahoga Falls, Ohio. Wayside maintains a Peninsula, Ohio mailing address.

In May of 1985, specifically May 28–30, the Health Care Financing Administration ("HCFA") conducted an on-site survey of the Wayside facility. The survey was conducted by the HCFA pursuant to its authority to "look behind" the state agency certification of an intermediate care facility. *See* 42 U.S.C. § 1396i(c).

On August 30, 1985, HCFA officials notified the State of Ohio and Wayside that as a result of the survey deficiencies were found and that the facility's Medicaid Provider Agreement would be cancelled effective November 1, 1985. The net effect of a cancellation of the Medicaid Provider Agreement is the termination of funds paid by the federal government on behalf of Medicaid recipients to Wayside. As a result of the notice of termination, Wayside sought a hearing under the administrative process.

An Administrative Law Judge conducted a hearing on August 12–26, 1986. In a lengthy written opinion, on May 14, 1986, the ALJ upheld HCFA's determination to cancel the provider agreement for Wayside.

On June 2, 1987, Wayside filed its administrative appeal to the Appeals Council from the ALJ's decision. Wayside also instituted a law suit against the U.S. Department of Health and Human Services seeking injunctive and declaratory relief prohibiting termination of payment of Medicaid funds to Wayside until the Appeals Council rendered its decision.

The case was assigned to United States District Court Judge Sam H. Bell and Judge Bell rendered a decision on June 30, 1987 finding a preliminary injunction in order pending the decision before the Appeals Council. *Wayside Farms v. U.S. Dept. of Health and Human Serv.,* 663 F.Supp. 945, 954–55 (N.D. Ohio 1987). Judge Bell concluded that "Wayside's provider agreement should be continued through the administrative appeal...." *Wayside,* 663 F.Supp. at 954.

On September 28, 1988, the Appeals Council issued its decision affirming the ALJ's decision. On October 6, 1988, the plaintiff initiated this appeal challenging the Appeals Council's decision and seeking injunctive relief that would allow a continuation of the Medicaid funding during the appellate review of the Appeals Council decision.

At issue in *Wayside Farms,* 663 F.Supp. 945, was the question of whether the provider agreement, and in practical terms the funding for Wayside, would be extended during the administrative appeal from the ALJ's decision to the Appeals Council. Under 42 U.S.C. § 1396i(c)(2), a provider agreement remains "in effect until the peri-

---

1. One can also make reference to the earlier litigation in this case, *Wayside Farms v. U.S. Dept. of Health and Human Serv.,* 663 F.Supp. 945 (N.D. Ohio 1987), for a detailed summary of the background facts to that point.

od for filing a request for a hearing has expired or, if a request has been filed, until a decision has been made by the Secretary." The question in the earlier litigation was whether the ALJ's decision constituted a "decision by the Secretary" as asserted by the government. Judge Bell reasoned that the language "a decision by the Secretary" was equivalent to "a final decision by the secretary," *i.e.*, the decision by the Appeals Council. Accordingly, Judge Bell determined that the provider agreement was to remain in effect pending the Appeals Council decision.

This case, therefore, is the next step in the process forecasted by Judge Bell. Judge Bell cautioned that

> [a]lthough [the preliminary injunction] allows plaintiff some period of respite, the Court must make clear that it may be only a brief stay in the termination proceedings relating to Wayside's provider agreement should the Secretary finally find that decertification is required. After a final decision to that effect, the Secretary is well within his authority and, in fact, required to take such action.

*Wayside Farms, Inc.*, 663 F.Supp. at 954. The Appeals Council has rendered its decision and the government has again served notice upon Wayside that its funds shall be terminated. Wayside is now before this Court asking for an injunction which would, in effect, stay the decision of the Secretary pending the review by this Court under 42 U.S.C. § 405(g).

### III. STANDARD FOR PRELIMINARY INJUNCTION.

■ Under applicable Sixth Circuit precedent, a court must consider four factors in determining whether it should grant an injunction:

(1) whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

(2) whether the plaintiffs have shown irreparable injury;

(3) whether the issuance of a preliminary injunction would cause substantial harm to others;

(4) whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Association v. Knebel*, 563 F.2d 256, 261 (6th Cir.1988); *see also, Glover v. Johnson*, 855 F.2d 277 (6th Cir.1988); *State of Ohio ex rel. Celebrezze v. N.R.C.*, 812 F.2d 288, 290 (6th Cir.1987); *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985). The Court may not weigh mechanically the four factors set out in *Mason County.* No single factor is determinative, and the Court should weigh each of the factors in light of the factual circumstances of the case. *See Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537–38 (6th Cir.1978), *cert. granted*, 440 U.S. 944, 99 S.Ct. 1420, 59 L.Ed.2d 632, *cert. dismissed*, 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979).

■ In *Roth*, the Sixth Circuit held that where a plaintiff makes a strong showing of irreparable harm, the injunction may issue on a lesser showing of a likelihood of prevailing on the merits. *Id.* In a case involving great irreparable harm, then, an injunction could issue on a showing that the plaintiff has raised questions that are "fair ground for litigation." *Id.* at 537; *see Brandeis Machinery & Supply Corp. v. Barber–Greene Company*, 503 F.2d 503, 505 (6th Cir.1974). It follows that the showing of a strong likelihood of prevailing on the merits will enable a court to issue an injunction despite a lesser showing of irreparable harm. *See Roth*, 583 F.2d at 537–38 (quoting *Metropolitan Detroit Plumbing & Mechanical Contractors Ass'n v. HEW*, 418 F.Supp. 585, 586 (E.D.Mich.1976)). *See also Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261 (6th Cir.1985); *In re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir.1985); *Van Drivers Union Local No. 392 v. Neal Moving & Storage*, 551 F.Supp. 429 (N.D. Ohio 1982).

### IV. ANALYSIS.

On the plaintiff's motion for a temporary restraining order the parties framed the two issues as follows: (1) whether the Court has the power to issue an injunction in this case; and (2) whether the plaintiff

has established the necessary criteria for granting an injunction. In the Court's order of September 13, 1988, it declined to address the first issue on the basis that because the plaintiff could not establish the criteria for an injunction it was unnecessary to determine whether the Court had the power to issue the injunction. After review of the briefs in this case and the case law on the subject matter, it is clear to the Court that this area of the law, *i.e.*, provider agreement termination and judicial review, is one that is largely unexplored and void of a large body of case law. With that in mind, it is the Court's view that it is important that it now consider both issues presented by the parties and indeed address, in the first instance, whether the Court has the power to issue a preliminary injunction after a final decision by the Secretary when the intermediate care facility seeks judicial review of the Secretary's decision in district court. The Court will then consider the remaining issue of whether the plaintiff has established that it meets the criteria for an injunction.

A. *Whether the Court has the Power to Issue an Injunction in this Case.*

This action for review of the Appeals Council decision affirming the ALJ's decision is brought by the plaintiff pursuant to 42 U.S.C. § 1396i(c)(2) which provides that

> Any skilled nursing facility or immediate care facility which is dissatisfied with a determination by the Secretary that it no longer qualifies as a skilled nursing facility or intermediate care facility for purposes of this subchapter, shall be entitled to a hearing by the Secretary to the same extent as is provided in section 405(b) of this title and judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title. Any agreement between such facility and the state agency shall remain in effect until the period for filing request for a hearing has expired or, if a request has been filed, until a decision has been made by the Secretary; except that the agreement shall not be extended if the Secretary makes a written determination, specifying the reasons therefor, that the continuation of provider status

constitutes an immediate and serious threat to the health and safety of patients, and the Secretary certifies that the facility has been notified of its deficiencies and has failed to correct them.

42 U.S.C. § 1396i(c)(2). In this case, Wayside has exhausted its administrative process including a hearing by the Secretary and is now seeking judicial review of the Secretary's final decision, embodied in the Appeals Council decision, under § 405(g).

Judicial review of the Secretary's decision is provided under 42 U.S.C. § 405(g) which provides:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. *The Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.*

42 U.S.C. § 405(g) (emphasis added).

 In determining whether this Court has jurisdiction to grant an injunction, both parties agree that the starting point for the analysis begins with the Supreme Court decision of *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). In *Califano v. Yamasaki*, the Court addressed whether a district court had the power to grant injunctive relief in a case in which jurisdiction was based upon 42 U.S.

C. § 405(g). The Court stated that "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." *Califano v. Yamasaki*, 442 U.S. at 705, 99 S.Ct. at 2559 (*citing Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946); *Scripps Howard Radio v. FCC*, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942)). The Supreme Court concluded that "[n]othing in either the language or the legislative history of § 205(g) indicates that Congress intended to preclude injunctive relief in § 205(g) suits." *Califano v. Yamasaki*, 442 U.S. at 705, 99 S.Ct. at 2560 (footnote omitted). Here, the Court reaches a similar conclusion in that nothing in the language or the legislative history of § 405(g) or § 1396i(c)(2) indicates that Congress intended to preclude injunctive relief in § 405(g) suits.

The government has supplied the Court with the legislative history of the 1980 Omnibus Reconciliation Act of 1980 as support for the proposition that it is Congress' intent that injunctive relief in § 405(g) suits involving § 1396i(c)(2) is inappropriate. The Court has examined that history and finds that there is no clear command of Congress that a federal court's equitable power to issue injunction in suits over this kind has been eliminated. The Court does not dispute that the legislative history of the 1980 Act as well as the Omnibus Reconciliation Act of 1987 reflects Congress's intent to give the Secretary an effective enforcement mechanism in its efforts to ensure that facilities which provide care under the Medicaid/Medicare programs do it in a manner consistent with minimal guidelines. However, there is nothing in that legislative history that indicates that this Court's equitable power has been either narrowed or eliminated.

The government also makes an argument that the decision in *Wayside Farm, Inc.*, 663 F.Supp. 945, prevents this Court from issuing an injunction. The government relies on the language in *Wayside* where the district court stated

Wayside's provider agreement should be continued through the administrative appeal which has been filed. Although this allows plaintiff some period of respite, the court must make clear that it may be only a brief stay in the termination proceedings relating to Wayside's provider agreement should the Secretary finally find that decertification is required. After a final decision to that effect, the Secretary is well within his authority and, *in fact, required to take such action.*

*Wayside Farms, Inc.*, 663 F.Supp. at 954 (emphasis added). The government's position is that "[a]ny injunctive relief following the Appeals Council's decision is prohibited by the court's order in the earlier case involving the same parties." Memorandum in Opposition to Motion for Temporary Restraining Order, (docket #7), p. 9.

The Court finds that the language relied upon by the government is not dispositive to the issue of whether this Court has the power to impose or grant injunctive relief. The language cited by the government from the earlier case is not supported by any citation nor is it a clear command that this Court is without power to enter equitable relief. Accordingly, the Court finds that the government's argument regarding the earlier case and the issue of injunctive relief here is not well taken.

In sum, the Court finds that it has the power to award injunctive relief in § 405(g) litigation involving the review of a decertification decision under § 1396i(c)(2).

**B.** *Whether the Plaintiff Has Established the Criterion Necessary for the Issuance of a Preliminary Injunction.*

At the hearing, the Court heard testimonial evidence that was directed primarily to the factor of whether the absence of an injunction would cause harm to others and whether the public interest would be served by issuing a preliminary injunction. The Court also heard arguments on the issue of whether the plaintiff had shown a strong or substantial likelihood of success on the merits. As discussed below, on the one hand the Court finds that the likelihood of success is exceedingly low while the

harm to others, specifically the residents is potentially great.

The Court will address each of the factors separately.

1. Whether the Plaintiff Has Shown a Strong or Substantial Likelihood or Probability of Success on the Merits.

The plaintiff advances three arguments in support of its claim of likelihood of success on the merits: (1) that the plaintiff was denied due process when the Administrative Law Judge (ALJ) reviewed the surveyor's notes during the hearing and refused to allow the plaintiff access to those notes for review or cross examination; (2) that the Health Care Financing Administration (HCFA) and ALJ violated the statutory "look behind" provisions, 42 U.S.C. § 1396i(c), and the Administrative Procedure Act, 5 U.S.C. § 558, by refusing the plaintiff the opportunity to correct deficiencies and present evidence that deficiencies were corrected; and (3) that the ALJ applied the wrong standard of compliance and therefore there is not substantial evidence to support the finding that the plaintiff was not in compliance with the Medicaid regulations.

The Court has already addressed, to some extent, the plaintiff's first two claims in its order of October 13, 1988. *See* docket # 10 at pp. 4–5. The plaintiff has expanded its arguments on the motion for preliminary injunction and the Court will address the expanded arguments below.

a. *Surveyor's Notes.*

■ As to the plaintiff's claim regarding the use of the surveyor's notes, the plaintiff argues that the harm caused by the ALJ's review of the surveyor's notes cannot be fully explored or determined because no one knows what those notes said except for the ALJ. The plaintiff claims that the denial of an opportunity to look at those notes during the hearing resulted in a denial of due process.

Plaintiff's argument is, in the Court's view, that the administrative process itself

was established to protect due process rights, and if a part of the process is potentially flawed, then the process has failed in its purpose. In this case, according to the plaintiff, the flaw in the process is the use of the notes by the ALJ.

The government argues that the plaintiff failed to subpoena the notes before the hearing despite the fact that a procedure for producing the notes by subpoena existed under federal regulations and despite the fact that the plaintiff had knowledge that notes existed from a pre-hearing conference held eight months prior to the ALJ hearing. Further, the government claims that plaintiff was permitted to examine notes at the hearing when they were referred to by a surveyor.

The plaintiff admits that it failed to subpoena notes; however, it claims that there are conflicting reports on when the existence became known. The plaintiff does not rebut the claim of the government that it was permitted to examine the notes when a specific reference was made to them.

It is unclear to the Court whether the plaintiff had in fact knowledge of the notes and failed to subpoena the notes before the hearing. However, the Court finds that the Appeals Council's decision sheds some light on the use of those notes by the ALJ. "[T]he Administrative Law Judge permitted Wayside to review portions of notes when a surveyor testified from them (this occurred generally where the witness was trying to identify the Wayside resident to which some deficiency citation related)." Appeals Council Decision at pp. 4–5.[2]

The Court finds that Wayside has failed to demonstrate that the use of alleged "secret evidence" by the ALJ renders the decision by the Secretary as one not based upon substantial evidence. From the Court's review of the Appeals Council decision, it is clear that the ALJ attempted to facilitate counsel for Wayside and the witnesses ability to refresh his or her memory in a manner that cannot be said to be an abuse of discretion. Furthermore, the

---

**2.** The Court is working from and citing to exhibits provided by the parties in lieu of the record.

The record in this case has not been produced by the government as of yet.

Court is impressed, as was the Appeals Council, that there is no indication on the record that the ALJ relied on the notes to reach any of his findings. Rather, the ALJ's decision is based on an exhaustive review of the evidence and the law.

### b. *Opportunity to Correct.*

 The plaintiff's second claim is that it should have been given an opportunity to correct any alleged deficiencies after the survey, and correspondingly the plaintiff claims that it was denied an opportunity to present evidence to the ALJ of corrections made after the survey.[3]

The plaintiff first relies on the Administrative Procedure Act (APA) 5 U.S.C. § 558 as support for the proposition that it should have been given an opportunity to make corrections. The government argues that the APA has no application here. Further, the government argues that the look behind statute was designed to strengthen the Secretary's authority to require minimum standards for Medicaid recipients.

It is clear to the Court that the plaintiff has failed to establish that § 558 of the APA has application to the administrative process under 42 U.S.C. § 1396i(c). Section 558 clearly applies to the issuance of a license and a suspension of licenses. The Court is unable to find any basis for its application to this case.

 The Court further finds that it is clearly the intent of Congress to give the Secretary an effective enforcement mechanism as a part of its duty to assure that the minimum federal regulations are attained. To that end, the regulations do not provide an opportunity to correct deficiencies. The Appeal's Council addressed the same arguments and concluded that

> [t]he position urged by counsel for Wayside would frustrate the congressional purpose to enable the Federal Govern-

ment (HCFA), through the "look-behind" procedure, to take prompt corrective action where, as here, the State agency has consistently, over an extended period, failed to do so. Opportunities to correct deficiencies and follow-up on provider compliance are the responsibilities of the State agency. The action of HCFA in this case was based on the overwhelming evidence that the State agency failed to enforce compliance and that the provider had been in continuous violation of its agreement.

Appeals Council's Decision at p. 3. There is no basis for the proposition that under the relevant statute Wayside is entitled to an opportunity to make any corrections. Therefore, the Court finds that the plaintiff has failed to establish that it was error for the ALJ to not accept evidence of corrections after the survey.

 The plaintiff next argues that it is inconsistent for there to be an opportunity to correct deficiencies under the "fast track" provisions of 42 U.S.C. § 1396i(c)(2) and not an opportunity under the "slow track" of the same section for which it falls under.[4]

Section 1396i(c)(2) provides that

> Any agreement between such facility and the State agency shall remain in effect until the period for filing a request for a hearing has expired or, if a request has been filed, until a decision has been made by the Secretary; except that the agreement shall not be extended if the Secretary makes a written determination, specifying the reasons therefor, that the continuation of provider status constitutes an immediate and serious threat to the health and safety of patients, and the Secretary certifies that the facility has been notified of its deficiencies and has failed to correct them.

---

**3.** The Court notes that the plaintiff has often merged those two concepts together in its briefs and arguments before the Court. At some points, the plaintiff seems to focus on the issue of whether it should have been given an opportunity to correct as opposed to an opportunity to present evidence and vice versa. Although related, the issues are distinct.

**4.** For an explanation of the "fast track" and "slow track" distinction under 42 U.S.C. § 1936i(c)(2), see *Gruter Foundation, Inc. v. Bowen,* 652 F.Supp. 245, 250–51 (N.D. Ohio 1986).

The Court agrees that there is an opportunity to correct deficiencies under the "fast-track" scenario. However, the opportunity to correct is related only to the issue of whether the provider agreement will remain in effect pending the hearing and appeal. *See, Gruter Foundation, Inc. v. Bowen,* 652 F.Supp. 245, 251 (N.D. Ohio 1986). The opportunity to correct under the "fast-track" does not necessarily mean that the decision to terminate will be changed. It is the Court's view that the opportunity to correct under the "fast-track" permits the facility to demonstrate that there is no serious threat to the health and safety of the residents so that it may maintain its provider agreement for the duration of the hearing and appeal. Accordingly, the Court finds that the plaintiff's claim of inconsistency is not determinative nor well founded.

### c. *Standard of Compliance.*

■ The third claim raised by the plaintiff is that the ALJ applied the wrong standard of compliance to Wayside. This claim was not raised at the time of the motion for a temporary restraining order.

The plaintiff claims that the appropriate standard is: whether the facility's deficiencies individually or in combination, do not jeopardize the patient's health or safety, or seriously limit the facility's capacity to give adequate care. The plaintiff argues that the ALJ incorrectly applied the following test: "whether an intermediate care facility is in substantial compliance with all of the standards of the Act and the applicable regulations."

The Appeal's Council addressed this same concern and concluded that "[t]he Administrative Law Judge did not use incorrect standards of evaluation, as Wayside asserts; he applied the regulations and assessed all relevant information, including the interpretative guidelines, in deciding whether the regulatory standard had been met." Appeals Council Decision at p. 4. Accordingly, the Court finds that the plaintiff has failed to establish that the ALJ's decision is not supported by substantial evidence because he applied the wrong standard.

### d. *Conclusion–Likelihood of Success.*

In sum, the Court finds that plaintiff has failed to establish a strong or substantial likelihood or probability of success on the merits. In fact, it is the Court's view that the plaintiff's showing likelihood of success is exceedingly low.

### 2. Whether the Plaintiffs Have Shown Irreparable Injury.

■ The Court heard testimony regarding the harm that would be suffered by Wayside if the federal funds were terminated. Wayside asserts that it employs some eighty employees at the facility and their jobs would be eliminated if the funds were terminated. The Court finds, however, that the financial interest of the provider is not a critical factor when determining whether a preliminary injunction should be issued. *See, e.g., Green v. Cashman,* 605 F.2d 945, 946 (6th Cir.1979) ("[W]e do not find in the statute authorizing Medicare and Medicaid any legislative intention to provide financial assistance to providers of care for their own benefit. Rather, the statute is designed to aid the patients and clients of such facilities."); *Gruter Foundation, Inc. v. Bowen,* 652 F.Supp. 245, 254 (N.D. Ohio 1986).

The Court recognizes that financial injury will result to Wayside and its employees if the injunction is not granted. There was testimony at the hearing that seventy-six out of the ninety-five patients at the facility receive Medicaid funding and that the loss of those funds would result in a termination of the operation of the facility. In *Gruter,* the Court addressed the same issue and stated:

> While realistically, the loss of Medicaid patients may serve to close Gruter ..., there is nothing preventing Gruter from continuing as a private provider. Indeed, the State of Ohio may continue to utilize the Gruter facility in some manner. The instant cause deals only with the question of federal, as opposed to state funding allotments.

*Gruter,* 652 F.Supp. at 254. Similarly, in this case it is the federal funding which is

at issue and here too there is nothing preventing Wayside from continuing its operation as a private provider. However, the Court is of the view that in the consideration of the four factors for an injunction, this factor is the least significant.

A difficult issue, however, posed by the plaintiff is what has been labeled a "Catch 22." The government's counsel stated at the October 18, 1988 hearing that the government's enforcement mechanism requires the termination of funds for a period of time in order to ensure compliance. The remedy for a provider such as Wayside is to do without the federal funding for its Medicaid patients until the provider applies for a recertification. The government contends that the statutory scheme is such that so long as the provider is receiving federal funding, decertification has not taken place. Decertification is equated then with the cut-off of funding. Only upon decertification (funding stopped) does the provider have standing to apply for recertification and the government concedes that such a process takes from 60 to 120 days. Thus, under the applicable rules, Wayside has been prevented from applying for recertification as its funding was extended when Judge Bell issued the injunction permitting a continuation of the funding pending the appeal of the ALJ's decision to the Appeals Council. Consequently, the Secretary viewed Wayside as certified, and therefore would not process a recertification application. There was evidence at the hearing submitted by Rebecca Poole and Dr. Poole, that they attempted to secure a resurvey after the 1985 termination decision. However, because of the above-described rules for recertification, no such resurvey was permitted. Counsel for Wayside, therefore, argues that because of the need for the funds, if they are terminated the facility will not be in a position to operate long enough to apply for recertification.

The Court recognizes the practical problems involved for Wayside in seeking recertification only after the termination of its funds. However, the Court finds that the plaintiff has not demonstrated that the regulations or process for recertification is contrary to the law and thus there can be no basis on that claim for this Court to find that the ALJ's decision is not supported by substantial evidence.

3. Whether the Issuance of a Preliminary Injunction Would Cause Substantial Harm to Others.

The issue of whether the issuance of a preliminary injunction would cause substantial harm to others is necessarily related to whether the denial of the injunction would cause harm to others. In this case, it is clear from the testimony at the hearing that some of the residents may suffer severely from a move should the funds be terminated. There was testimony that the residents of the facility are already faced with depression and unruly behavior as a result of the filing of this law suit itself. Moreover, there was evidence that a move of the residents by the state would cause psychological set backs in some of the patients that are treated for psychological problems.[5] The testimony and evidence presented as to the effect of the move should the funds be terminated was uncontradicted by the government.

Notwithstanding the evidence that many of the residents of Wayside may suffer from what has been referred to as "transfer trauma," the Court is of the view that it would be just as harmful for the residents to prolong an inevitable move given the low showing of likelihood of success on the merits of the plaintiff's case. In simplest terms, the Court finds it unjustifiable to issue a preliminary injunction now when it would only be prolonging the eventual move of the residents. In *Gruter Foundation, Inc.*, the court was faced with the same concerns and particularly articulated the competing interests:

> The most troubling aspect is that the residents of Gruter may be subjected to transfer with all of the traumatic consequences such a transfer may involve.

---

**5.** It is generally agreed among all parties to this case that the State is under a statutory obligation to move the residents of Wayside if federal funds are terminated.

This population is perhaps particularly susceptible to trauma from such a rapid shift in the surroundings to which many have become accustomed. However, if the present surroundings are found injurious to the residents' health and safety, the trauma caused by remaining there is of greater concern to this court and must be addressed immediately.

*Gruter Foundation, Inc.*, 652 F.Supp. at 254. While *Gruter* involved the decertification of a facility which had been determined a threat to the immediate safety of the residents, the Court's description of the competing concerns is relevant to this case. On the one hand, the Court recognizes the traumatic consequences of a transfer here but at the same time finds that such a consideration in the face of a low showing of a likelihood of success does not warrant an order maintaining the status quo.

The Court recognizes that the government will not be substantially harmed if the injunction is imposed. It was established at the hearing, that if these patients are moved to another facility they are still entitled to some form of federal assistance, paid to the new provider, because of their Medicaid status. Accordingly, and in theory, the government will be required to pay some aid or Medicaid funding regardless of where these patients are placed.

4. Whether the Public Interest Would Be Served by Issuing a Preliminary Injunction.

■ There is a strong public interest in maintaining the integrity of a system that calls for strict enforcement of the minimum guidelines established for the operation of facilities such as Wayside. The public interest in properly maintaining facilities such as Wayside includes the health and safety of the residents, and those who work at the facilities. In this case, the Court finds that the public interest, therefore, would not be served by the issuance of a preliminary injunction. In view of the low likelihood of success and the Court's view that an eventual transfer will take place, the public's interest in maintaining facilities that are within the proper guidelines will not be served by maintaining the status quo.

## V. CONCLUSION.

For the reasons that appear above, the Court finds that the motion for preliminary injunction is denied.

The Court finds that the likelihood of success on the merits, the plaintiff's review of the Secretary's decision, is exceedingly low. The Court also finds that the plaintiff has failed to establish that it will suffer irreparable injury as a result of the denial of the preliminary injunction. Moreover, the Court finds that while harm may be caused to some of the residents as a result of not issuing the injunction, in the long run given the low likelihood of success on the merits, a decision not to enter an injunction would better serve the residents. Finally, the Court finds that the public interest would not be served by issuing the injunction.

As the Court indicated in its brief introduction, this case has generated an incredible amount of emotion and scrutiny in its short history and the Court recognizes the impact of its decision. The Court also recognizes that it is often placed in a position as the ultimate decisionmaker, while in fact, it is the federal government that holds the key to the case and the Court is instead merely interpreting the law as established by Congress.

By virtue of this ruling, the Court anticipates that the State defendants will undertake within a short period of time to transfer the affected patients at Wayside. The Court further anticipates that the plaintiff may seek immediate relief from the denial of injunctive relief with the Sixth Circuit Court of Appeals. Consequently, in order to facilitate the plaintiff's immediate appeal from this order, if one is prosecuted, the order denying plaintiff's motion for injunctive relief will include a separate order enjoining the State defendants from transferring the affected Wayside patients prior to Wednesday, November 2, 1988.

IT IS SO ORDERED.