**GRUTER FOUNDATION, INC., et al., Plaintiffs,**

v.

**Otis R. BOWEN, Secretary, Department of Health and Human Services, et al., Defendants.**

**No. C86–4862–A.**

United States District Court, N.D. Ohio, E.D.

Dec. 22, 1986.

247

Kathleen A. Sutula, Asst. U.S. Atty., U.S. Attorney's Office, Cleveland, Ohio, Carolyn Cozad Hughes, Asst. Regional Counsel, Dept. of Health and Human Services, Washington, D.C., for defendants.

## ORDER

BELL, District Judge.

Plaintiffs Gruter Foundation, Inc. (Gruter) and Mrs. Delores Kratzer filed this action on November 12, 1986. A temporary restraining order sought at that time was granted *ex parte;* it enjoined the defendant Otis R. Bowen (the Secretary), Secretary, United States Department of Health and Human Services (HHS) from terminating Gruter's provider agreement and Medicaid certification until November 22, 1986. On November 21, 1986, plaintiffs filed a withdrawal of their request for preliminary injunction based upon their belief that the threat of Gruter's immediate decertification was no longer present.

On December 2, 1986, plaintiffs filed a first amended complaint. This pleading adds Ruth Griffenhagan as a plaintiff. (Both of the individual plaintiffs are suing on behalf of their children who reside at Gruter.) On December 7, 1986, a supplemental complaint was filed up-dating the events documented in the December 2, 1986 amended complaint. In addition, a second motion for temporary restraining order was submitted and heard on December 17, 1986. The Secretary at that time offered his motion to dismiss and his opposition to plaintiffs' motion for preliminary injunction. Supplemental briefs were thereafter submitted by both parties on December 19, 1986. With this procedural history explained, discussion of the plaintiffs' allegations and the issues presently before the court follows.

I. Plaintiffs' Complaint-First Amended and Supplemental

Gruter is an Ohio corporation operating a long-term residential facility in New Pittsburg, Ohio, for persons having mental retardation or other developmental disabilities. It has been licensed by the State of Ohio as a long-term facility and certified by

David D. Noble, Roth, Noble, & Rolf, Cleveland, Ohio, for plaintiffs.

the Ohio Department of Health as a Medicaid provider of such services for fifteen years. Gruter also has had a provider agreement with the Ohio Department of Human Services during this time which agreement is a prerequisite to reimbursement for Medicaid services. In fact, ninety-seven percent of its 238 residents are supported by Medicaid funds.

The Secretary is in charge of HHS which oversees and partially funds Ohio's Medicaid program. Defendants Edward Zawislak, Jerry Sandlin and Jennie Harnell are HHS surveyors of long-term facilities. Their duties include ascertaining whether the facility meets federal standards for Medicaid participation. In furtherance of those duties, they surveyed Gruter in October and November, 1986. Defendant Chester C. Stroyny is the Associate Regional Administrator of HHS who notified Gruter by letter dated December 15, 1986 that its Medicaid providers' agreement would be terminated effective December 18, 1986. Supplemental Complaint, Exhibit B. It is this action that plaintiffs now seek to enjoin.

II. Survey History and Administrative Background

HHS conducted several recent surveys of Gruter. The first was in April, 1986, and resulted in a July 2, 1986 letter which noted deficiencies and advised Gruter that its Medicaid participation would be canceled if corrective action was not taken. This notification did not indicate that there was an immediate threat to the health or safety of Gruter residents, and informed Gruter that they could request a hearing.

Gruter responded to this notice with a plan of correction which addressed the deficiencies and which included a request for resurvey so that improvements could be measured. A hearing was also requested and scheduled before an administrative law judge. This hearing was subsequently rescheduled, however, pending resurvey which was scheduled for November or December, 1986.

On October 28–31, 1986, surveyors returned unannounced to Gruter to take what plaintiff alleges to be a new survey rather than a resurvey. First Amended Complaint at ¶ 20. This survey resulted in notification that conditions at Gruter posed an immediate and serious threat to the health and safety of residents. First Amended Complaint, Exhibit A. Gruter was advised that its participation in the Medicaid program would be terminated effective November 14, 1986, if the conditions were not corrected by that date. On November 10, 1986, Gruter notified defendant Stroyny at HHS by letter of the actions taken to correct deficiencies. HHS did not respond and on November 12, 1986, this court entered an order temporarily restraining HHS from terminating Gruter's Medicaid funding.

A third survey of Gruter was then conducted on November 13–14, 1986. Mr. Stroyny wrote to Gruter on November 18, 1986, and stated that, based on this inspection, conditions at Gruter no longer constituted an immediate threat to the health and safety of its residents. It was found, however, that Gruter was still out of compliance with many federal requirements. Because of this continued non-compliance, Gruter was further advised that HHS would proceed with the hearing previously scheduled unless it was determined that conditions had deteriorated. First Amended Complaint, Exhibit E.

On December 11–12, 1986, yet another survey was taken of the conditions at Gruter. This survey prompted HHS to notify Gruter that its agents had found conditions which pose an immediate threat to the health and safety of its residents. Thus, Gruter was advised first that its Medicaid participation would therefore be terminated as of December 18, 1986, and second, that a hearing could be sought after the effective date of termination. Supplemental Complaint, Exhibit B.

Plaintiffs contend that measures taken pursuant to its plan of correction have in fact led to improved conditions at Gruter since early November. See Affidavits attached to Supplemental Complaint. Thus,

they argue, continuation of its Medicaid participation does not pose any immediate threat to the health and safety of its residents and the threatened decertification does not comport with this statutory requirement. Supplemental Complaint at ¶ 6, 7. Plaintiffs claim is multi-faceted. They contend that HHS has not complied with its own regulations in regard to this series of surveys and that it has no regulations to guide it in making a determination that an immediate threat to the residents' health and safety exists. They further contend that the lack of regulation in this area also serves to deprive Medicaid participants of any definition of what constitutes an 'immediate threat to the health and safety' of residents as well as the procedures to be followed in taking corrective action and notifying HHS. Plaintiffs seek this court's order permanently enjoining defendants from proceeding further with its improperly conducted decertification procedures and a declaratory judgment defining both the meaning of certain terms used in 42 U.S.C. § 1396i(c)(1) and (2), and the procedures which HHS must follow in the decertification process. Finally, plaintiffs ask this court to declare that the actions taken by the defendants in this case are void because they are in violation of 42 U.S.C. § 1396i(c) and indeed violate defendant's own guidelines. Thus, it is argued, HHS has breached the due process rights of plaintiffs which rights are secured to them by the fifth amendment to the Constitution.

## III. Legal Issues Presented

Under the applicable precedent from the Sixth Circuit, four factors must be considered in determining whether a preliminary injunction should be granted. These four factors are:

1. Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2. Whether the plaintiff has shown irreparable injury;

3. Whether the issuance of a preliminary injunction would cause substantial harm to others; and

4. Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Association v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977); *accord, Christian Schmidt Brewing v. G. Heileman Brewing*, 753 F.2d 1354, 1356 (6th Cir.1985); *Tate v. Frey*, 735 F.2d 986, 990 (6th Cir.1984); *Friendship Materials, Inc. v. Michigan Brick*, 679 F.2d 100, 102 (6th Cir.1982).

In relation to the first factor and also in his motion to dismiss, the Secretary has raised the threshold issue of whether this court has jurisdiction in this case given the fact that plaintiffs have not exhausted the available administrative review procedures which in the Secretary's opinion satisfy due process requirements. Plaintiffs contend that there are no remedies available to exhaust prior to its decertification. Plaintiffs further contend they have raised a constitutional issue which is collateral to the substantive issues to be raised in the administrative proceeding. Exhaustion requirements under these circumstances, it is argued, can thus be waived.

Subject matter jurisdiction must be pled and established by the party invoking it. *McGovern v. American Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir.1975). Plaintiffs' first amended complaint contains a statement that jurisdiction is based on 28 U.S.C. §§ 1332 and 1346, on section 1910(c) of the Social Security Act, 42 U.S.C. § 1396i(c), and on the due process clause of the fifth amendment to the Constitution. A declaratory judgment as to the meaning of § 1396i(c) is also sought pursuant to 28 U.S.C. § 2201. In their brief, plaintiffs claim that jurisdiction is based on federal question jurisdiction as provided by 28 U.S.C. § 1331 and the All Writs Act, 28 U.S.C. § 1651.

Clearly, it has been decided that federal question jurisdiction as provided by 28 U.S.C. § 1331 is not available to challenge even Constitutional claims arising from termination decisions under the Social Security Act. *Weinberger v. Salfi*, 422 U.S. 749, 757–61, 95 S.Ct. 2457, 2462–64, 45 L.Ed.2d

522 (1975); *Northlake Community Hospital v. United States of America*, 654 F.2d 1234, 1240 (7th Cir.1981). Section 405(h) of Title 42 specifically states that this basis for jurisdiction, as well as that allowed under 28 U.S.C. § 1346, is unavailable to allow recovery on claims arising under the Social Security Act. Thus, neither § 1331 or § 1346 are available to support plaintiffs' claim of jurisdiction here.

■ Plaintiffs' reference to 28 U.S.C. § 1332, diversity of citizenship, in their complaint is perhaps mistaken. It, too, is not a proper basis for jurisdiction in that this suit is not between residents of different states nor does it involve an amount in controversy in excess of $10,000.00. 28 U.S.C. § 1332(a).

■ Jurisdiction may not be founded solely upon the declaratory judgment statute, 28 U.S.C. § 2201. Plaintiffs must still establish an independent jurisdictional basis before being entitled to relief by way of declaratory judgment. *Schilling v. Rogers*, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960); *Appling County v. Municipal Electric Authority of Georgia*, 621 F.2d 1301, 1303 (5th Cir.1980); *Hughes-Bechtol, Inc. v. West Virginia Board of Regents*, 527 F.Supp. 1366, 1377 (S.D.Ohio 1981), *aff'd*, 737 F.2d 540 (6th Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984). Therefore, plaintiffs are entitled to declaratory relief only if this court has subject matter jurisdiction to proceed. Similarly, the All Writs Act, 28 U.S.C. § 1651, does not extend jurisdiction but is merely in aid of that jurisdiction, if any, already acquired.

■ The only basis for jurisdiction which remains is that provided under the Social Security Act. Analysis must, therefore, begin with the statute at issue in this case, 42 U.S.C. § 1396i(c), which authorizes the Secretary to terminate Medicaid participation of skilled nursing and intermediate care facilities. This statute is part of Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, wherein the Medicaid program was established to provide "financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Medicaid is funded by both state and federal governments. Each state administers its Medicaid program within the confines of federal requirements for receiving federal funds. Gruter qualifies as an intermediate care facility which provides services funded under Ohio's Medicaid program. Federal funding is available to Gruter only if it has a provider agreement and has been certified by the Ohio Department of Human Services as meeting federal health and safety standards. 42 C.F.R. § 440.2(b).

Prior to 1980, the state Medicaid agency had the primary responsibility for surveying intermediate care facilities to determine if they met federal certification requirements. The Secretary was authorized to conduct its own surveys, however, as part of the Omnibus Budget Reconciliation Act of 1980, Pub.L. No. 96–499, § 916(b)(10)(B) (codified at 42 U.S.C. § 1396a(a)(33)(B)). The Medicaid statute at issue in this case, 42 U.S.C. § 1396i(c), was added at the same time. It provides:

(1) The Secretary may cancel approval of any skilled nursing or intermediate care facility at any time if he finds on the basis of a determination made by him as provided in section 1396(a)(33)(B) of this title that a facility fails to meet the requirements contained in section 1396a(a)(28) of this title or section 1396(c) of this title, or if he finds grounds for termination of his agreement with the facility pursuant to section 1395cc(b) of this title. In that event the Secretary shall notify the State agency and the skilled nursing facility or intermediate care facility that approval of eligibility of the facility to participate in the programs established by this subchapter and subchapter XVIII of this chapter shall be terminated at a time specified by the Secretary. The approval of eligibility of any such facility to participate in such programs may not be reinstated unless the Secretary finds that the reason for

termination has been removed and there is reasonable assurance that it will not recur.

(2) Any skilled nursing facility or intermediate care facility which is dissatisfied with a determination by the Secretary that it no longer qualifies as a skilled nursing facility or intermediate care facility for purposes of this subchapter, shall be entitled to a hearing by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title. Any agreement between such facility and the State agency shall remain in effect until the period for filing a request for a hearing has expired or, if a request has been filed until a decision has been made by the Secretary; except that the agreement shall not be extended if the Secretary makes a written determination, specifying the reasons therefor, that the continuation of provider status constitutes an immediate and serious threat to the health and safety of patients, and the Secretary certifies that the facility has been notified of its deficiencies and has failed to correct them.

Gruter analyzes this statute as denominating two levels of decertification: slow track and fast track. Section 1396i(c)(2) provides that an intermediate care facility which has been notified that its Medicaid participation shall be terminated is entitled to an administrative hearing to the same extent as is provided by 42 U.S.C. § 405(b) and, in addition, to judicial review of the Secretary's final decision after such hearing as provided in 42 U.S.C. § 405(g). If such a hearing is pursued, the facility's provider agreement with the state shall remain in effect until a decision is rendered. Gruter refers to this as "slow track" decertification.

The statute also provides, however, that the provider agreement shall not be extended if the Secretary makes a determination in writing, with the reasons specified, that "continuation of the provider status consti-

tutes an immediate and serious threat to the health and safety of patients," and, in addition, the Secretary certifies that the facility has been notified of the deficiencies and has failed to correct them. Gruter refers to this procedure as "fast track" decertification because a facility's eligibility to receive Medicaid funds stops on the date noticed by the Secretary prior to the availability of a hearing.

■ Gruter contends that there are no administrative procedures to exhaust in "fast track" decertification. However, § 1396i(c)(2) clearly refers to the administrative procedures under § 405(b) and (g) for actions taken by the Secretary regardless of whether the certification is continued during those procedures. The only distinction provided by the statute is that the certification will not be continued through the hearing process if the Secretary finds an immediate and serious threat to the health and safety of patients exists. Plaintiffs' claim that *no* administrative procedures exist for "fast track" decertification is thus meritless. But such procedures are admittedly available only after certification has been terminated.

The issue to be decided is whether the administrative remedies provided by § 405, even when they are post-termination, must be exhausted before this court may assume subject matter jurisdiction. Generally, judicial review is available under § 405(g) only if three requirements are met: (1) an action is brought after a final decision of the Secretary made as a result of a hearing to which the plaintiff was a party; (2) the action was commenced within sixty days of the notice of the Secretary's decision, or in such time as the Secretary may allow; and (3) the action was filed in an appropriate court. *See Northlake Community Hospital v. United States,* 654 F.2d at 1240. Two prerequisites must be shown to establish the final decision requirement: (1) the presentation of a claim for benefits and (2) exhaustion of administrative remedies. *Mathews v. Eldridge,* 424 U.S. 319, 329, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976).

■ In this case, Gruter is challenging the Secretary's decision to terminate its provider status, the methods used and the unavailability of a pretermination hearing. Thus, the first prerequisite, presentation of a claim, is satisfied. *See American Healthcare Corp. v. Schweiker*, 688 F.2d 1072, 1082 (7th Cir.1982).

The exhaustion requirement is waiverable by the Secretary, *Mathews v. Eldridge*, 424 U.S. at 328, 96 S.Ct. at 899, but he is clearly not waiving in this case. Exhaustion may also be waived when a plaintiff raises a colorable constitutional claim which is entirely collateral to his substantive claim of entitlement and when the facts suggest that the claimant's interest in prompt resolution is so great as to render deference to the agency's judgment inappropriate. *Id.* at 330, 96 S.Ct. at 900; *American Healthcare Corp. v. Schweiker*, 688 F.2d at 1082.

Plaintiffs assert that if § 405 is deemed applicable, then this court should waive the exhaustion requirement because: (1) plaintiffs have raised a colorable constitutional claim which is completely collateral to the substantive basis of the decertification, (2) because the harm they would suffer pending exhaustion would be irreparable; and (3) because exhaustion would be futile. Plaintiffs refer the court to two recent Supreme Court cases involving the exhaustion doctrine the opinions in which suggest that application of the doctrine must be flexible and practical. *Bowen v. City of New York*, 476 U.S. ——, ——, 106 S.Ct. 2022, 2031, 2032, 90 L.Ed.2d 462, 477 (1986) (This case involved persons who were denied disability benefits under an illegal secret policy of the Secretary.); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. ——, ——, 106 S.Ct. 2133, 2140–2141, 90 L.Ed.2d 623, 634–35 (1986) (Judicial review was sought and held not precluded by the exhaustion requirement of the Social Security Act of the regulations promulgated under Part B of the Medicare Program.). Plaintiffs further rely on the decision of *Greene v. Bowen*, 639 F.Supp. 554 (E.D.Calif.1986), in which the district court found that a doctor had raised an

issue collateral to the substantive issues before the Secretary regarding the decision to exclude him from rendering services under the Medicare program. All of these cases, although factually distinguishable, are helpful to the court in relation to the waiver issue.

Plaintiffs claim that their challenge to the procedures used in this case raises issues collateral to those before the Secretary in the decertification hearing. The court agrees that challenges to the procedures used to make the decertification decision may be considered collateral. Procedurally "wrongful" decertification may be considered irreparable. As stated by the Supreme Court in *Bowen v. City of New York*, 476 U.S. at ——, 106 S.Ct. at 2032, 90 L.Ed.2d at 477:

> We should be especially sensitive to this kind of harm where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place.

It is plaintiffs' contention that they have been subjected to procedure contrary to the Secretary's own regulations which have denied them effective notice and any meaningful opportunity to be heard. The issue of the process used to notify plaintiffs of the Secretary's decision to decertify Gruter is collateral to the substance of that decision. However, before the exhaustion requirement can be waived, plaintiffs must also show that this collateral issue raises a colorable constitutional claim.

The record in this case shows that four surveys have been taken at Gruter since April, 1986, and Gruter was notified of serious deficiencies in each instance. *See* Government's Motion to Dismiss and In Opposition to Plaintiffs' Motion for Preliminary Injunction, Exhibits D, G, I, and A (hereinafter Government's Motion Exhibit __). In fact, conditions were found during the October survey which prompted the Secretary to advise Gruter that the cited deficiencies posed an immediate and seri-

ous threat to the health and safety of residents. Government's Motion Exhibit G. After Gruter submitted a plan of correction, Government's Motion Exhibit H, the Secretary resurveyed Gruter and found the immediate nature of the deficiencies had subsided but that Gruter was still out of compliance with federal guidelines. Government's Motion Exhibit I. Thus, all parties clearly knew that serious deficiencies still existed at Gruter even though they were being addressed and knew that Gruter's certification would continue through the hearing process unless conditions deteriorated. *Id.* The issue of notice cannot thus be considered even "colorable" at this point.

■ In early December, the Secretary decided to survey Gruter again after learning that a twelve-year old profoundly retarded boy had died suddenly and without apparent explanation. Upon review of this matter, the Secretary apparently concluded that deterioration in conditions had in fact occurred at Gruter. Therefore, he again advised Gruter that he deemed continued certification would result in immediate and serious threat to the health and safety of residents. Government's Motion Exhibit A. The Secretary mailed Gruter a letter to that effect on December 15, 1986. The letter which was received on December 16, 1986, also advised that certification would cease on December 18, 1986. It is this notice Gruter claims is defective in the following manner:

1. It failed to indicate the reasons for not extending the Provider Agreement with any specificity;

2. It did not state that, "the continuation of provider status constitutes an immediate and serious threat to the health and safety of the patients;" and

3. It failed to certify, "that the facility has been notified of the deficiencies and has failed to correct them." 42 U.S.C. § 1396i.

Considering the procedural history of this review since April, 1986, when the first survey occurred, plaintiffs' reasons must be considered hypertechnical. Gruter was given full notice of the deficiencies underlying the Secretary's decision in the letter of November 6, 1986. Government's Motion Exhibit G. After the November survey, Gruter was advised that its provider status would be continued unless conditions deteriorated. Government's Motion Exhibit I. When it resurveyed, notice was sent that conditions referenced in earlier findings, had deteriorated due to lack of follow-through on planned corrective action Gruter had submitted to the Secretary. *See* Government's Motion Exhibits F and G. Under these circumstances the court cannot find a minimal colorable constitutional claim of lack of due process by virtue of notice and opportunity to be heard and therefore jurisdiction on this basis cannot be assumed by the court pursuant to 42 U.S.C. § 405(g).

■ To the extent that what Gruter is actually seeking as part of its due process rights is a pretermination hearing, circuit courts deciding this issue in the context of termination of provider agreements have found that due process is satisfied by the availability of a post-termination hearing. *Northlake Community Hospital v. United States,* 654 F.2d 1234, 1241–43 (7th Cir. 1981); *Geriatrics, Inc. v. Harris,* 640 F.2d 262, 265 (10th Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981); *Green v. Cashman,* 605 F.2d 945, 946 (6th Cir.1979); *Caton Ridge Nursing Home, Inc. v. Califano,* 596 F.2d 608, 609 (4th Cir.1979); *Town Court Nursing Center, Inc. v. Beal,* 586 F.2d 266, 277 (3d Cir. 1978); *Case v. Weinberger,* 523 F.2d 602, 606–09 (2d Cir.1975). The reasoning underlying these decisions generally accepts the premise that a Medicaid provider may have a property interest in the expectation of continued participation in the Medicaid program which is subject to due process protection. In balancing the interests involved, however, the circuits have found that whatever due process rights providers have are sufficiently satisfied by a post-termination evidentiary hearing.

The true beneficiaries of the Medicaid program are Medicaid recipients as a class

and Gruter residents in this case. Although indispensable in the delivery of Medicaid services, providers are not the intended, but merely the incidental, beneficiaries of the Medicaid program. The Secretary's interest and duty is to ensure that the health and safety of residents in Medicaid funded facilities is maintained. Providers know when they assume participation, that federal regulations will have to be continually met or their participation will be terminated. The Secretary has been authorized by Congress to terminate participation where providers do not comply pursuant to § 1396i(c); and to terminate it before a hearing if the residents' health and safety are jeopardized. This court also finds that any due process rights held by the provider are sufficiently protected by a post-termination hearing when the health and safety of the true Medicaid beneficiaries is at issue. The Secretary is charged with and empowered to make that determination. 42 U.S.C. § 1396i. Deference should thus be given to the administrative processes authorized by Congress under 42 U.S.C. § 405 for its review.

Plaintiffs assert that if a pretermination hearing is not provided, the harm caused thereby will be irreparable. The court acknowledges the fact that ninety-seven percent of Gruter's residents are Medicaid recipients who would be moved from Gruter between the time of decertification and January 18, 1987. There are many troubling aspects about this fact. The least troubling is the effect on Gruter. While realistically, the loss of Medicaid patients may serve to close Gruter before the date of the post-termination administrative hearing, there is nothing preventing Gruter from continuing as a private provider. Indeed, the State of Ohio may continue to utilize the Gruter facility in some manner. The instant cause deals only with the question of federal, as opposed to state funding allotments.

The most troubling aspect is that the residents of Gruter may be subjected to transfer with all of the traumatic consequences such a transfer may involve. This population is perhaps particularly susceptible to trauma from such a rapid shift in the surroundings to which many have become accustomed. However, if the present surroundings are found injurious to the residents' health and safety, the trauma caused by remaining there is of greater concern to this court and must be addressed immediately. Medicaid recipients have no entitlement to continued residence in the home of their choice. *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 785, 100 S.Ct. 2467, 2475, 65 L.Ed.2d 506 (1980). They, therefore, do not have a right to a hearing prior to termination of a provider's certification. *Id.* at 775, 100 S.Ct. at 2470. This court is strongly of the opinion that the interest of Medicaid recipients in receiving services consistent with levels of care which protect their health and safety and the public interest in prompt removal from seriously deficient homes must outweigh the trauma which may occur when they are transferred to other places of residence. *See, id.,* at 787, 100 S.Ct. at 2476, where Justice Stevens acknowledges that transfers may have an immediate, adverse affect on residents and *see, also,* 800 n. 7, 100 S.Ct. at 2483 n. 7, where Justice Blackmun discusses this impact in relation to the greater threat of harm by remaining in the environment until after administrative review. Therefore, although any trauma incumbent in transferring Gruter residents is of great concern to this court, their health and safety is of far greater concern.

The court finds, therefore, that there is no basis in this case for waiver of the requirement of exhaustion of the § 405 administrative processes Congress has authorized to be used under § 1396i(c). This court is thus without subject matter jurisdiction to proceed on plaintiffs' claim. As there is no basis for jurisdiction, plaintiffs cannot establish the first requirement for injunctive relief, probable success on the merits. Accordingly, plaintiffs' motion for injunctive relief is denied and the Secretary's motion to dismiss for lack of subject

matter jurisdiction is granted. This cause is dismissed.

IT IS SO ORDERED.