**NORTHWEST HEALTHCARE, L.P., d/b/a Bayou Glen–Northwest, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary, Department of Health & Human Services, United States of America, David Smith, M.D., Commissioner of the Texas Department of Health, Burton F. Railford, Acting Commissioner of the Texas Department of Human Services, Defendants.**

Civ. No. A 92 CA 145.

United States District Court,
W.D. Texas,
Austin Division.

March 30, 1992.

Kevin A. Reed, David M. Davis, Davis & Wilkerson, Austin, Tex., for plaintiff.

Ernest C. Garcia, U.S. Attorney's Office, Dan Morales, Atty. Gen., Linda B. Secord, Asst. Atty. Gen. of Texas, Austin, Tex., for defendants.

## ORDER

SPARKS, District Judge.

On March 18, 1992, the parties above, represented by counsel, appeared before this court during an evidentiary hearing to determine the merits of Plaintiff Northwest Healthcare, L.P. D/B/A Bayou Glen–Northwest's ("Bayou Glen") Request for a Preliminary and Permanent Injunction to restrain the Defendants from terminating Bayou Glen's participation in the Medicare and/or Medicaid programs or failing to pay for covered services for eligible residents residing in the Plaintiff's facility. For reasons set out below the Court finds that (1) the Plaintiff's request is outside of the jurisdiction of the Court; (2) even if the Court had jurisdiction, Plaintiff has failed to show that it has no adequate remedy at law; and (3) in light of Plaintiff's past record of deficiencies, Plaintiff is not entitled to equitable relief against the Defendants under the "clean hands doctrine".

## BACKGROUND

Bayou Glen–Northwest is a 180 bed skilled nursing facility in Houston, Texas. It participates in both Medicare and Medicaid programs. As a participating provider, Bayou Glen is entitled to reimbursement for services provided to residents under either the Medicare or Medicaid programs. If Bayou Glen's participation in Medicare or Medicaid is terminated involuntarily, its mortgage may be considered in default. Through cross-default provisions other facilities also owned or managed by Convalescent Services, Inc. and Northwest Healthcare, L.P., which owns Bayou Glen, may also be declared in default. If defaults are declared, Bayou Glen and possibly up to 27 other facilities may be forced out of business as the result of acceleration of their debts. The obvious result of these possible facts is a large number of persons receiving nursing services will have to be relocated.

Medicare is a federal program under which the United States provides funds to persons 65 years or older. If a provider chooses to participate in the Medicare program, it must comply with Title XVIII of the Social Security Act and other conditions required for participation. Medicare is administered by the U.S. Department of Health and Human Services Health Care Financing Administration ("HCFA").

Medicaid is a joint federal-state program under which the United States provides funds to reimburse states, in part, for programs of public assistance to persons "whose income and resources are insufficient to meet the costs of necessary medical service." 42 U.S.C. § 1396. If a state chooses to participate in the Medicaid program, it must comply with Title XIX of the Social Security Act. Texas is a participant and the Texas Department of Human Services administers the Medicaid program in Texas. Providers who choose to participate must comply with conditions for participation promulgated by the Texas Department of Human Services.

While most monitoring of participating providers' facilities under both Medicare and Medicaid is conducted by the Texas Department of Health, the U.S. Department of Health and Human Services retains what is commonly called "look behind" authority to conduct its own surveys to verify compliance by providers. *See* 42 U.S.C. § 1396a(a)(33)(B). If a facility fails to meet requirements relating to health and safety of patients, the Secretary of the Department of Health and Human Services ("Secretary") may terminate the facility's participation in the Medicare program. 42

U.S.C. § 1395i–3(h)(2); · 42 U.S.C. § 1396a(a)(33)(B); 42 U.S.C. § 1396r(h)(3)(B). When the Secretary notifies the Texas Department of Human Services that he has terminated a Medicare agreement with a skilled nursing facility, the Medicaid agreement with that facility must also be terminated, effective on the same date as the Medicare termination. 42 CFR § 442.20(b).

Under its "look behind" authority a HCFA survey team conducted a survey of Bayou Glen on February 7, 1992. It found numerous deficiencies and on February 20, 1992, notified Bayou Glen that the deficiencies posed an "immediate and serious" threat to patient health and safety and that the facility's Medicare and Medicaid agreements would terminate on March 9, 1992. In its letter, HCFA stated that its authority to terminate Bayou Glen's agreements was based on 42 U.S.C. § 1396r giving the Secretary power · to terminate participation if deficiencies "immediately jeopardize the health and safety of its residents." HCFA also indicated that it would try to arrange a resurvey before March 9 and that Bayou Glen could, within 60 days, seek a hearing before an Administrative Law Judge in accordance with 42 CFR 498.5(b).

HCFA conducted a follow-up survey from March 4 through March 6. The surveyors determined that an "immediate and serious" threat to residents' health and safety remained, and the March 9, 1992 termination date remained firm.

On March 9, 1992, Glen Bayou obtained a temporary restraining order in the 261st Judicial District Court of Travis County, Texas. On March 12, 1992, the Defendants removed the case to this Court. And, on March 16, 1992, Bayou Glen initiated its administrative appeal.

## JURISDICTION

Bayou Glen asserts this Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1346, 42 U.S.C. § 1343,[1] and 42 U.S.C. § 1395ff and 405(g). However, Section

1395cc(h) of Title 42 of the United States Code states that a facility dissatisfied with a termination decision by the Secretary "shall· be entitled to a hearing ... by the Secretary ... to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision *after* such hearing as is provided in section 405(g) of this title." 42 U.S.C. § 1395cc(h) (emphasis added). Section 405(b) allows a facility to request a hearing within 60 days after it receives notice of a decision by the Secretary. If dissatisfied with the Secretary's final decision *after* the hearing, the facility may obtain review in a district court by filing an action within 60 days of notice of the final decision. *Id.* § 405(g). Section 405(h) further provides that no decision of the Secretary shall be reviewable "except as herein provided" and no action "shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."

Plaintiff Bayou Glen essentially wants this Court to either directly overrule the Secretary's decision to terminate its participation in Medicare and Medicaid, bypassing any administrative appeal, or at least postpone the termination of payments for services rendered until after such an administrative hearing could first be held. In either case, this Court would be circumventing Congress' express intent that a facility resort to a state or federal district court only after. it had exhausted its administrative remedies. Sections 1395cc and 405 of Title 42 clearly set out the proper procedures for appealing a decision made by the Secretary of the Department of Health and Human Services to terminate a facility's Medicare and Medicaid agreements.

In addition to its contentions that Defendants acted in disregard of standard protocol for conducting surveys and arbitrarily, capriciously and incorrectly found deficiencies "serious and immediate", Bayou Glen claims that no pre-termination hearing violates its constitutional rights to due process

---

**1.** As this Court can find no Section 1343 in Title 42, it assumes the Plaintiff means Section 1343 of Title 28.

under the Fifth and Fourteenth Amendments to the United States Constitution. While Bayou Glen's disagreements with HCFA's methods and determinations are undoubtedly in the realm of claims "arising under" the Social Security Act and limited to the appellate remedies described above, its constitutional claims bear some discussion.

Section 405(h) expressly precludes federal question jurisdiction under 28 U.S.C. § 1331[2] or 28 U.S.C. § 1346. The fact that Bayou Glen is claiming a constitutional violation does not change that result. Bayou Glen's standing and substantive basis for assertion of their constitutional contentions still arise under the Social Security Act, and Section 405(h) is the exclusive basis for subject matter jurisdiction. *See Weinberger v. Salfi,* 422 U.S. 749, 757–59, 95 S.Ct. 2457, 2463, 2464, 45 L.Ed.2d 522; *Mathews v. Eldridge,* 424 U.S. 319, 327, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976); *Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072, 1081–82 (7th Cir.1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983).

In order to obtain judicial review under Section 405(h), one must turn to Section 405(g), which requires a "final decision" by the Secretary. *Mathews,* 424 U.S. at 328, 96 S.Ct. at 899. The Supreme Court has set out a two-part test for obtaining judicial review under Section 405(g). First, the "nonwaivable element", a claim for benefits must have been presented to the Secretary. Second, the "waivable element", administrative remedies prescribed by the Secretary must be exhausted. *Id.; see also Americana,* 688 F.2d at 1082 (applying 405(g) to termination of Medicare and Medicaid benefits to nursing facilities).

Because its suit rests entirely on the assertion that termination is inappropriate and funds should be continued under its Medicare and Medicaid agreements, the nonwaivable element of a claim for benefits is easily met. As for the waivable element, while generally the Secretary has complete authority to determine the "finality" of his decision, the Supreme Court recognizes that exhaustion of administrative remedies may be waived by a court when a plaintiff raises a "colorable" constitutional claim "entirely collateral" to his substantive claim of entitlement. *Mathews,* 424 U.S. at 331–32, 96 S.Ct. at 901, *Americana,* 688 F.2d at 1082.

Bayou Glen's claim that no pre-termination hearing violates its constitutional right to due process is not a colorable constitutional claim. In *Mathews v. Eldridge,* the Supreme Court found the plaintiff's claim that "because of his physical condition and dependency upon the disability benefits, an erroneous termination would damage him in a way not recompensable through retroactive payments" to be at least colorable. *Mathews,* 424 U.S. at 331, 96 S.Ct. at 901. However, the Court's final holding was that despite the potentially significant hardship on the erroneously terminated disability recipient, a hearing prior to the termination of disability payments was not constitutionally required. *Id.* at 342, 349, 96 S.Ct. at 906, 910. The Court carefully distinguished the case from an earlier case requiring a pre-termination hearing for welfare recipients on the grounds that no hearing before termination would deprive a welfare recipient of the very means by which to live while he or she waited for a post-termination hearing. *Id.* at 340, 96 S.Ct. at 905.

While Bayou Glen as an entity may cease to exist if no pre-termination hearing is held, its employees and patients will not be deprived of a means of living and the "death" of a corporation does not warrant the degree of protection required for a welfare recipient, or even a disability recipient. This is especially true since patients receiving Medicare or Medicaid benefits are the intended beneficiaries, and Bayou Glen a mere incidental beneficiary. Furthermore, the government's interest in conserving scarce resources and protecting Medicare and Medicaid recipients is much

---

**2.** The preclusion of jurisdiction under 28 U.S.C. § 1331 necessarily precludes jurisdiction under 28 U.S.C. § 1343, which is simply a more specific subset of the general federal question jurisdiction set out in Section 1331.

stronger than the financial interest of a corporation. *See id.* at 348, 96 S.Ct. at 909; *see also Americana,* 688 F.2d at 1083. The Supreme Court's final holding in *Mathews v. Eldridge* makes it clear that Bayou Glen's due process claim to a pre-termination hearing is not "colorable".

This was also the result in a Seventh Circuit opinion, *Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072 (7th Cir.1982). In *Americana,* the Court found that several nursing facilities' had no "colorable constitutional claim to a due process pre-termination hearing" and the district courts had no subject matter jurisdiction. *Id.* at 1083; *accord Gruter Found., Inc. v. Bower,* 652 F.Supp. 245, 253 (N.D.Ohio 1986). As did Bayou Glen, those nursing facilities had advance notice of the decision to terminate their participation in Medicare and Medicaid were and were resurveyed prior to termination. *Id.* Bayou Glen did not even begin to attempt to take advantage of its administrative remedy until March 16, 1992, almost a full month after it received notice of the impending termination.

Bayou Glen has no colorable due process claim, and this Court has no subject matter jurisdiction.

*Lexington Management Co. v. Dep't of Social Serv.,* 656 F.Supp. 36 (W.D.Mo. 1986), cited by the Plaintiff, does not change the decision of this Court. In *Lexington* there was a real dispute as to whether or not the plaintiff was entitled to continuing funds pending a final administrative appeal. There the plaintiff facility *only* received Medicaid funding but was certified under both Medicare and Medicaid. *Id.* at 38. Under 42 U.S.C. § 1396i(c)(2) the plaintiff, as a Medicaid participant, would have been entitled to full "SNF-level" funding pending exhaustion of its administrative appeals. *Id.* at 42. However, HCFA proceeded under 42 CFR § 442.20(b), which requires Medicaid participation to terminate if Medicare participation is terminated. *Id.* Termination of Medicare participation does not entitle a facility to full SNF-level funding pending administrative appeals. Thus, the Court

found that HCFA's methods were really a "clever way of trying to circumvent the obligation under § 1396i(c)(2) to continue SNF-level Medicaid funding ... pending exhaustion of administrative appeals." *Id.* at 43.

Bayou Glen's case is quite different. Bayou Glen is an active Medicare participant and thus entitlement to pre-termination funding is not an issue under the Social Security Act or implementing regulations. Furthermore, in *Lexington* the facility was not found to present a "immediate and serious threat to the health and safety of patients." If it had been, full SNF-level funding would not have been available even if HCFA had directly terminated the facility's participation in Medicaid only. *See id.* at 37–38 n. 1 (citing § 1396i(c)(2)); *see also Gruter,* 652 F.Supp. at 253. HCFA determined that Bayou Glen's deficiencies did pose an "immediate and serious" threat and thus Bayou Glen would not be entitled to full funding pending exhaustion of its administrative remedies under Medicare or Medicaid. *See* 42 CFR § 498.-5(j)(2).

Bayou Glen must exhaust its administrative remedies before this Court will have subject matter jurisdiction.

## ADEQUATE REMEDY AT LAW

■ Even if this Court had jurisdiction to entertain Bayou Glen's request for injunctive relief, it would not grant an injunction. Bayou Glen cannot meet its burden of proving that it has no adequate remedy at law. As already explained above, Congress has provided an adequate remedy at law in the form of the administrative process provided in Section 405 of Title 42 of the United States Code. Bayou Glen is a mere third-party beneficiary in the Medicare and Medicaid systems. Termination of its provider agreements in those programs does not prohibit it from providing private nursing services. Nor is the federal or Texas government responsible for Bayou Glen's mortgage agreement. A post-termination hearing, after which judicial review is available, has been established as an adequate remedy at law by the

Congress which established and maintains these programs.[3]

## "CLEAN HANDS" DOCTRINE

Finally, the Court also finds that awarding Bayou Glen the equitable relief it desires would be inappropriate under the "clean hands" doctrine. One seeking equitable relief from a court, should do so only with "clean hands". *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945). Bayou Glen has been threatened with termination of its participation in Medicare and Medicaid five times in the year 1991 and has had its certification as a Medicare or Medicaid provider denied one time. Of those five threatened terminations, three were the result of findings of a serious and immediate threat to patient health and safety. Although these past findings are not relevant to the decision by HCFA to terminate Bayou Glen's participation in Medicare or Medicaid this time, they are relevant to this Court's decision to grant equitable relief. Bayou Glen has had more than its fair share of opportunities to redeem itself in the past, and this Court will not grant it another.

## CONCLUSION

For the reasons described above the Court ORDERS that Plaintiff's Request for Preliminary Injunction and Permanent Injunction is DENIED.

---

**3.** Nonetheless, the Court notes that evidence presented at the March 18 hearing raises serious doubts about the validity of HCFA's finding of serious and immediate injury, especially considering the lack of evidence to support findings of serious significant negative outcomes in any of the patients at Bayou Glen. Considering the very real danger of "transfer trauma" to patients forced to move and the equally questionable need to subject those patients to that risk, the Court hopes that the parties to this lawsuit will put the needs of those patients above all other considerations and reach a manageable agreement on their own to obviate the need to unnecessarily move any patients until a final decision has been reached.