**DALLAS HEALTHCARE, INC., Plaintiff,**

v.

**HEALTH AND HUMAN SERVICES COMMISSION, et al., Defendants.**

**No. 3:96–CV–0701–T.**

United States District Court, N.D. Texas, Dallas Division.

March 14, 1996.

Order Denying Reconsideration March 22, 1996.

Ronald Ray Payne, Theodore Scott Byers, Hesse & Jones, Dallas, TX, for plaintiff.

Mary Ann Kilgo, U.S. Attorney's Office, Department of Justice, Dallas, TX, for defendants.

### ORDER MEMORIALIZING RULING ON APPLICATION FOR TEMPORARY RESTRAINING ORDER

MALONEY, District Judge.

On March 12, 1996, the Court conducted a hearing on the Application for Temporary Restraining Order filed by Plaintiff Dallas Healthcare, Inc. Plaintiff requested the Court to enjoin Defendants from refusing to make Medicaid and Medicare payments and from decertifying their facility as a qualified Medicaid and Medicare nursing home. Defendant Health Care Financing Administration appeared at the hearing and opposed the application for TRO. After considering the written submissions of both parties and the arguments at the hearing, the Court determined that it lacked subject matter jurisdiction to issue the TRO. Accordingly, the Court denied Dallas Healthcare's application.

Defendant Health and Human Services Commission (HHSC) is the state agency designated to administer federal medical assistance funds, including Medicaid. Defendant Texas Department of Human Services (TDHS) acts as the agent of HHSC by certifying that nursing facilities are in compliance with the requirements for participation in the Medicaid program and by pursuing enforcement actions against nursing facilities that are not in compliance with such regulations. Defendant Health Care Financing Administration (HCFA) is a federal agency authorized to enter into agreements with the states by which the appropriate state survey agency will determine whether providers are in compliance with the requirements of the Medicare program.

Medicaid is a program established by Title XIX of the Social Security Act and is jointly funded by the state and federal governments for the provision of health services to persons "whose income and resources are insufficient to meet the costs of necessary medical service." 42 U.S.C. § 1396. Providers who choose to participate in the program must comply with conditions for participation promulgated by the Texas Department of Human Services. *Northwest Healthcare, L.P. v. Sullivan,* 793 F.Supp. 724, 725 (W.D.Tex. 1992).

Medicare is a program established by Title XVIII of the Social Security Act which assists elderly and disabled persons in the purchase of necessary health care. Although Medicare is funded entirely by the federal government and administered by the Secretary, certain administrative tasks are performed on behalf of the Secretary under contract with state agencies. If a provider chooses to participate in the program, it must comply with Title XVIII and other conditions required for participation. *Northwest Healthcare,* 793 F.Supp. at 725.

Dallas Healthcare operates a skilled nursing facility that is licensed by the state and participates in both the Medicare and Medicaid programs. The facility has 120 licensed beds, and currently supports 89 residents. Of the 89 residents, 66 are covered by Medicaid, 6 are covered by Medicare, and 17 are private paying patients.

On September 13, 1995, health care professionals from TDHS conducted a survey of Dallas Healthcare's facility. The surveyors found that Dallas Healthcare was not in substantial compliance with the requirements for continued participation in the Medicare program. Shortly thereafter, Dallas Healthcare submitted a plan of correction to TDHS alleging that it was in substantial compliance with Medicare participation requirements.

On November 20, 1995, surveyors conducted a revisit of the facility and determined that it was not in substantial compliance with several Medicare requirements. TDHC then recommended to HCFA that it terminate Dallas Healthcare's Medicare agreement. On November 29, 1995, TDHS notified Dallas Healthcare of its findings and recommendation to HCFA.

On January 16, 1996, HCFA notified Dallas Healthcare that its Medicare agreement would be terminated on March 12, 1996, that a denial of payment for new admissions would become effective February 2, 1996, and that a civil monetary penalty may be imposed retroactive to September 13, 1995.

On January 26, 1996, and March 7, 1996, the surveyors conducted their second and third follow-up surveys, and found each time that Dallas Healthcare's facility was not in substantial compliance with Medicare participation requirements.

On March 7, 1996, Dallas Healthcare delivered correspondence to HCFA appealing the findings of non-compliance. Subsequently, HCFA informed Dallas Healthcare that it would terminate its provider agreements on March 13, 1996.

Dallas Healthcare now requests the Court to enjoin the termination of the Medicare and Medicaid agreements pending appeal of the determination that it is not in substantial compliance with the requirements of participation. Dallas Healthcare claims that it will suffer irreparable harm if the TRO does not issue because the facility will be forced to either operate without payment by Medicare or Medicaid ‘or cease operations. Dallas Healthcare also argues that if the facility closed, the residents will be permanently displaced or relocated to other facilities which would cause them trauma and the loss of their preferred residential accommodations. However, the Court must have the subject matter jurisdiction over the action before it can issue the requested TRO.

■ A facility that is dissatisfied with a termination decision by the Secretary is entitled to hearing by the Secretary, and to judicial review of the Secretary's decision after such hearing is provided. 42 U.S.C. § 1395cc(h); *Northwest Healthcare*, 793 F.Supp. at 726. A facility may request a hearing within 60 days after it receives notice of a decision by the Secretary. 42 U.S.C § 405(b). If dissatisfied with the Secretary's final decision after the hearing, the facility may obtain review in a district court by filing an action within 60 days of notice of the final decision. 42 U.S.C § 405(g). No decision of the Secretary is reviewable except as provided by the statute, 42 U.S.C. § 405(h), and a district court cannot acquire subject matter jurisdiction over a determination of the Secretary until the facility has exhausted administrative remedies. *Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072, 1082 (7th Cir.1982); *Northwest Healthcare*, 793 F.Supp. at 726; *see also Riley Hosp. & Benev. Ass'n v. Bowen*, 804 F.2d 302 (5th Cir. 1986); *Smith v. North Louisiana Medical Review Ass'n*, 735 F.2d 168, 171 (5th Cir. 1984); *but see Lexington Management Co. v. Dep't of Social Serv.*, 656 F.Supp. 36 (W.D.Mo.1986).

■ Dallas Healthcare argues that, although an appeal is currently pending before the Secretary, the decision to terminate its provider agreements is "final" under the exception to the exhaustion requirement established by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

*Mathews* established a two-part test for obtaining judicial review under § 405(g). First, a claim for benefits must have been presented to the Secretary. Second, administrative remedies must be exhausted. *Mathews*, 424 U.S. at 328, 96 S.Ct. at 899. The first element is considered "non-waivable," while the second element may be waived by the Court when a plaintiff raises a colorable constitutional claim that is entirely collateral to his substantive claim of entitlement. *Id.* at 330–32, 96 S.Ct. at 900–01; *Northwest Healthcare*, 793 F.Supp. at 727.

Arguing for application of the waiver of the second *Mathews* element, Dallas Healthcare claims that TDHS reached the decision to terminate its provider agreements using a standard more strict that one allowed by federal law. Specifically, Dallas Healthcare claims that TDHS adopted a "zero tolerance" standard instead of the more lenient "substantial compliance" standard. *See* 59 Fed. Reg. 56115 (1994). Dallas Healthcare argues that this amounts to arbitrary and capricious conduct in violation their right to due process, and that this constitutional claim is collateral to its claim for entitlement. However, this argument is unconvincing.

In the opinion of the Court, the issue of whether TDHS applied the proper standard goes directly to Dallas Healthcare's claim of entitlement and is not separate or collateral to the issue being considered on appeal by the Secretary. Even assuming that TDHS did apply the wrong standard, under the administrative scheme established by Congress, the Secretary must make a final determination before the Court can exercise its subject matter jurisdiction. Further, to the extent that Dallas Healthcare is arguing that the Court can stay the decision to terminate the provider agreements pending final decision of the Secretary, this Court finds opinion of the court in *Northwest Healthcare* to be squarely on point and dispositive. *Northwest Healthcare*, 793 F.Supp. at 726–28 (finding *Mathews* inapplicable under similar facts). Therefore, Dallas Healthcare's application for TRO is denied.

It is therefore **ORDERED** that the Application for Temporary Restraining Order, filed by Plaintiff Dallas Healthcare, Inc., on March 12, 1996, is denied.

### ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR RECONSIDERATION

Before the Court is the Emergency Motion for Reconsideration of the Court's Order Dismissing Case for Lack of Subject Matter Jurisdiction filed by Plaintiff Dallas Healthcare, Inc.[1] After considering the motion, the Court is of the opinion that it should be denied.

On March 12, 1996, the Court conducted a hearing on Plaintiff's application for temporary restraining order. At the hearing, the Court ruled from the bench that it lacked subject matter jurisdiction over this cause and denied the TRO. The Court memorialized its ruling by order filed March 14, 1996. Subsequently, the Court granted Defendants' motion to dismiss. With the present motion, Dallas Healthcare requests reconsideration

of the Court's ruling regarding subject matter jurisdiction.

Briefly, Dallas Healthcare's complaint requests the Court to enjoin Defendants from terminating their Medicare and Medicaid agreements pending administrative appeal of the determination that Dallas Healthcare is not in substantial compliance with the requirements of participation in these programs.[2] For the reasons stated in the Court's order of March 14, 1996, Dallas Healthcare has failed to exhaust its administrative remedies. Dallas Healthcare's failure to exhaust precludes judicial review.

In its motion for reconsideration, Dallas Healthcare provides the Court with authority that it may waive the exhaustion requirement where the constitutional challenge brought is "entirely collateral to a substantive claim of entitlement." *Mathews v. Eldridge*, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976); *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). However, the cases upon which Dallas Healthcare relies counsel against waiving the exhaustion requirement in this case.

In *Bowen*, for example, the respondents brought a class action against the Secretary and Commissioner of the Social Security Administration seeking relief on behalf of all individuals who resided in New York who had, within a specified period, been denied disability benefits or whose benefits were terminated pursuant to an allegedly illegal internal policy of the Secretary. The district court certified the class as including claimants who had not complied with the 60–day requirement for seeking judicial review and other claimants who had not exhausted administrative remedies. Ruling that the policy in question was illegal, the district court ordered the Secretary to reopen the decisions denying or terminating benefits and to redetermine eligibility. The court of appeals and the Supreme Court affirmed the ruling of the district court. *Bowen*, 476 U.S. at 467, 106 S.Ct. at 2022.

---

1. This motion was filed before the Court dismissed the case and entered the final judgment on the docket. The Court construes this motion as one for reconsideration of the Court's ruling from the bench denying Plaintiff's application for TRO on jurisdictional grounds.

2. For a comprehensive statement of the case, see the Court's Order Memorializing Ruling on Application for Temporary Restraining Order, filed March 14, 1996.

In affirming the decision to waive the exhaustion' requirement, the Supreme Court instructed that the decision to waive should be "guided by the policies underlying the exhaustion requirement." *Bowen*, 476 U.S. at 484, 106 S.Ct. at 2032. The Supreme Court noted that because of the agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context. *Id.* at 485, 106 S.Ct. at 2032. The decision to deviate from this general rule was motivated by several factors.

First, the district court in *Bowen* made an express finding that the Secretary had promulgated a system-wide illegal policy that wrongfully denied claimants their benefits. This finding was made after many of the class members had exhausted their administrative remedies. The Secretary had an opportunity to consider and reject the arguments made by the claimants. The district court ruled that requiring the remaining claimants to exhaust would be futile. The Supreme Court determined that, under these unique circumstances, there was nothing to be gained from permitting the additional compilation of the factual record. *Bowen*, 476 U.S. at 485, 106 S.Ct. at 2032.

In this case, Dallas Healthcare argues Defendants have promulgated an illegal policy similar to that of the defendants in *Bowen*. Specifically, Dallas Healthcare contends that Defendants have adopted a *de facto* "zero tolerance" standard that is stricter than the substantial compliance standard established by federal law. However, there is no indication that the Secretary has had the opportunity to consider and reject this argument.

Next, the Supreme Court in *Bowen* focused on the nature of the relief requested by the class and granted by the district court. The class claimants did not request, nor did they receive, the payment of benefits. Rather, the district court ordered that their claims be reopened at the administrative level for reconsideration in light of the ruling regarding the illegal policy. *Bowen*, 476 U.S. at 485, 106 S.Ct. at 2032. Thus, the claims of the class members were entirely collateral to their claim for benefits, and the district court

"showed proper respect for administrative process." *Id.*

Here, the prayer in Dallas Healthcare's complaint and application for injunction requests the Court to enter a permanent injunction preventing Defendants from terminating their provider agreements. Further, Dallas Healthcare requests the Court to enjoin Defendants from withholding payments of Medicaid and Medicare funds. Thus, the request is not collateral but directly related to their claim for benefits. Arguing that Defendants have employed an unlawful standard is merely an attempt to circumvent the administrative process established by Congress.

Finally, the Supreme Court also relied on the finding that the direct beneficiaries of the social security payments would suffer irreparable harm if forced to fully exhaust. *Bowen*, 476 U.S. at 483, 106 S.Ct. at 2031. However, it is unlikely that Dallas Healthcare, an indirect beneficiary of Medicare and Medicaid benefits, could demonstrate irreparable harm for the reasons stated in *Northwest Healthcare, L.P. v. Sullivan*, 793 F.Supp. 724, 727 (W.D.Tex.1992) (finding that patients and employees of facility would not be deprived of a means of living and that the "death" of a corporation does not warrant the degree of protection required for a direct beneficiary). Dallas Healthcare simply does not fall under the narrow exception to the exhaustion requirement established by *Mathews* and followed in *Bowen*.

Dallas Healthcare also argues that the right to judicial review is a cornerstone of our democracy, and relies on *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803) and *United States v. Nourse*, 9 Pet. 8, 9 L.Ed. 31 (1835). However, the Court's ruling does not foreclose the opportunity for judicial review—it merely respects the administrative process established by Congress which requires exhaustion of administrative remedies before a party is entitled to judicial review.

In sum, Dallas Healthcare has failed to demonstrate that the relief it requests is collateral to its claim for benefits or that it is entitled to waiver of the exhaustion require-

ment. Dallas Healthcare must make its arguments regarding the alleged "zero tolerance" standard to the Secretary before the Court will consider its claims. The motion for reconsideration is denied.

It is therefore **ORDERED** that the Emergency Motion for Reconsideration of the Court's Order Dismissing Case for Lack of Subject Matter Jurisdiction filed by Plaintiff Dallas Healthcare, Inc., on March 18, 1996, is **denied.**